# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | |
|---|---|
| AMANDA SMITH, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff. | )<br>) |
| v. | ) Case No. _____ |
| | ) |
| ATKINS NUTRITIONALS, INC., | ) |
| | ) |
| Defendant. | ) **CLASS ACTION COMPLAINT** |
| | ) **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

This case concerns the labeling used by Atkins Nutritionals, Inc. when it touts its products as having low "net carbs" even though the products contain sugar alcohols. When it calculates "net carbs" for labeling purposes, Atkins subtracts carbohydrates associated with sugar alcohols from its calculation, even though sugar alcohols contribute to a product's carbohydrates and Atkins itself has characterized the term "net carbs" as "imprecise." Simply put, the calculation that Atkins employs is wrong, meaning that the labeling and representations regarding net carbs also are wrong. Atkins conceals these facts from consumers in violation of Missouri law.

Plaintiff files this Class Action Complaint, individually and on behalf of all others similarly situated, who purchased food products which Atkins touted as having low "net carb" totals.

### THE PARTIES

1. Plaintiff Amanda Smith is a resident of Cole County, Missouri who purchased Atkins food products.

2. Defendant is a Colorado corporation with headquarters located at 1050 17th Street,

1

Ste. 1000, Denver, Colorado 80265-1001.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because it is a class action in which one member of the class is a citizen of a State different than the defendant and the matter in controversy exceeds the sum or value of $5 million.

4. The Court may exercise personal jurisdiction over Atkins because it has sufficient minimum contacts with Missouri, and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing and distribution of its products.

5. A substantial portion of the events complained of herein occurred in Cole County, Missouri; therefore, venue is proper in the Central Division of the Western District.

## FACTUAL ALLEGATIONS

6. Defendant Atkins has concealed material facts from consumers in that it has failed to disclose that its "net carb" calculation is misleading because sugar alcohols have a carbohydrate impact that should be included in any carbohydrate calculation.

7. Furthermore, Atkins made false, misleading statements to deceive consumers into purchasing its products under the belief that they are extremely low in carbohydrates, when, in fact, they are not.

8. Defendant Atkins' fraudulent market scheme includes touting a low "net carb" total for many products, but the phrase "net carb" is highly deceiving, and, as calculated on Atkins' product labels, fraudulent. This is particularly true where Atkins conceals the true nature of sugar alcohols, and conceals the fact that it subtracts sugar alcohols from its total carbohydrate calculation to reach its "net carbs" calculation.

2

9. Defendant Atkins is the company which was formed by the late Dr. Robert Atkins (hereinafter "Dr. Atkins") to promote the sale of books and food items related to the "Atkins Diet," a low to no carbohydrate diet.

10. To follow the Atkins Diet, users must forsake carbs which are present in most processed foods in the average American's diet. In 1999, at the time the Atkins Diet was gaining sweeping popularity, the late Dr. Atkins informed adherents that the most popular artificial sweeteners that American manufacturers use to replace conventional sugars were not approved for use in the Atkins Diet. Dr. Atkins wrote, "Sweeteners such as sorbitol, mannitol, and other hexitols [i.e., sugar alcohols] are not allowed." *See* Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (Rev.) at p. 100 (1999).

11. In 2002, Dr. Atkins revised this prohibition. He stated, "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable." Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 112 (2002).

12. What changed? Between 1999 and 2002, Atkins had established a growing line of food products that included sugar alcohols.

### Atkins' Specific Claims on "Net Carbs"

13. Atkins' website at www.atkins.com explains its definition of "net carbs" as "the total carbohydrate content of the food minus the fiber content and sugar alcohols." It further claims, "The Net Carbs number reflects the grams of carbohydrate the significantly impact your blood sugar level and therefore are the only carbs you need to count when you do Atkins."

14. Atkins claims its "Net Carb" calculation is based on "science."

15. Atkins further claims:

> Net Carbs are the carbohydrates that significantly impact the blood-sugar level; they're the only carbs that count when following Atkins.

3

> The good news is that the grams of carbohydrate in fiber, glycerine, and sugar alcohols don't break down and convert to blood sugar and need not be counted by people on the ANA. … So Net Carbs represent the number of grams of total carbohydrate minus those that do not impact blood sugar.[1]

16. Atkins manufactures, distributes, markets, advertises, and sells products containing sugar alcohols as replacements for ordinary carbohydrates.

17. Maltitol is the sugar alcohol of Atkins' choice. For example, it is a leading ingredient in the following Atkins' products: (a) Blueberry Greek Yogurt Bar; (b) Chocolate Peanut Butter Pretzel Bar; (c) Strawberry Almond Bar; (d) Cinnamon Bun Bar; (e) Chocolate Chip Granola Bar; (f) Chocolate Peanut Butter Bar; (g) Cookies n' Crème Bar; (h) Mudslide Bar; (i) Chocolate Chip Cookie Dough Bar; (j) Triple Chocolate Bar; (k) Caramel Chocolate Peanut Nougat Bar; (l) Caramel Double Chocolate Crunch Bar; (m) Cashew Trail Mix Bar; (n) Coconut Almond Delight Bar; (o) Dark Chocolate Almond Coconut Crunch Bar; (p) Caramel Chocolate Nut Roll; (q) Dark Chocolate Decadence Bar; (r) Chocolate Chip Crisp Bar; (s) Chocolate Hazelnut Bar; (t) Chocolate Oatmeal Fiber Bar; (u) Cranberry Almond Bar; (v) Chocolate Covered Almonds; (w) Chocolate Candies; (x) Chocolate Peanut Candies; (y) Caramel Nut Chew Bar; (z) Chocolate Caramel Mousse Bar; (aa) Chocolate Coconut Bar; (bb) Nutty Fudge Brownie; (cc) Peanut Butter Cups; and (dd) Peanut Caramel Cluster Bar.

18. The Atkins "net carb" formula subtracts all grams of sugar alcohol from carbohydrates. For example, its "Chocolate Candies" product claims to have just "1g Net Carb."

---

[1] *See* http://www.atkins.com/Science/Articles---Library/Carbohydrates/The-Blood-SugarRoller-Coaster--Excess-Carbs,-Exce.aspx

4



19. The ingredients panel for Atkins' Chocolate Candies reveals the following:

| **Nutrition Facts** |
| --- |
| Serving Size 1 pack (28g) |

| **Amount Per Serving** | |
| --- | --- |
| **Calories** 110 | Fat Cal. 60 |
| | **% Daily Value*** |
| **Total Fat** 7g | 11% |
| Saturated Fat 4.5g | 23% |
| Trans Fat 0g | |
| **Cholesterol** <5mg | 1% |
| **Sodium** 5mg | 0% |
| **Potassium** 60mg | 2% |
| **Total Carbohydrate** 19g | 6% |
| Dietary Fiber 4g | 16% |
| Sugars 1g | |
| ★ Sugar Alcohols 14g | |
| **Protein** 1g | 1% |
| Vitamin A 0% • Vitamin C | 0% |
| Calcium 2% • Iron | 2% |

Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
| --- | --- | --- | --- |
| Total Fat | Less than | 65g | 80g |
| Saturated Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |
| Protein | | 50g | 65g |

★ Sugar Alcohols total includes 0g of glycerin.

INGREDIENTS: CHOCOLATE COATING [MALTITOL, COCOA BUTTER, INULIN, UNSWEETENED CHOCOLATE, WHOLE MILK POWDER, MILK FAT, COCOA POWDER (PROCESSED WITH ALKALI), SOY LECITHIN, VANILLA, NATURAL FLAVORS, SUCRALOSE], MALTITOL, LESS THAN 1% OF PURE VANILLA EXTRACT, CONFECTIONER'S GLAZE, CARNAUBA WAX, BEESWAX, TITANIUM DIOXIDE COLOR, YELLOW 5 LAKE, RED 40 LAKE, BLUE 1 LAKE, BLUE 2 LAKE, YELLOW 6 LAKE, YELLOW 6, GUM ARABIC. FR01
**CONTAINS MILK AND SOY.**
**THIS PRODUCT IS MANUFACTURED IN A FACILITY THAT USES PEANUTS, OTHER TREE NUTS AND WHEAT.**

20. Thus, Atkins' starts with 19g of total carbs then subtracts 4g of Dietary Fiber and 14g of Sugar Alcohols to arrive at a Net Carbs claim of just 1 gram. The ingredient list reveals "maltitol" is the largest content of the product.

21. By this calculation, Atkins assigns a carbohydrate value of zero to maltitol and any other sugar alcohols for this product.

22. But this method of calculation conflicts with the method espoused by Dr. Atkins in his books. Indeed, Dr. Atkins stated that to arrive at net carbs, an individual should subtract only carbohydrates associated with fiber. He stated: "Basically, you can deduct the grams of fiber from the food's total carb count. I call the net number of grams, 'The carbs that count when you do Atkins.'" Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 68 (2002). He further elaborated, "And determining which carbs count is simple: Check the total fiber grams listed on the food label and subtract that number from the total grams of carbohydrate listed." *Id.* at p. 69. Thus, even Dr. Atkins uses a different carbohydrate calculation than that used by Atkins in its labeling.

23. Atkins does not disclose the conflict between Dr. Atkins' espoused method of calculating "net carbs" and the method used by the company.

**Sugar Alcohols Retain Significant Energy Value**

24. Contrary to Atkins' claims, the authoritative scientific research on sugar alcohols, particularly maltitol, shows that they continue to have a significant impact on blood sugar levels.

25. The Diabetes Teaching Center at the University of California, San Francisco puts it best, "[D]on't be fooled – sugar alcohols are still a form of carbohydrate, and they still affect your blood sugar levels, if not as dramatically."

26. Similarly, Dr. Regina Castro of the Mayo Clinic warns consumers should "be cautious with sugar alcohols" because they "can increase your blood sugar level."[2]

27. To Plaintiffs' knowledge, no independent scientist, doctor, or researcher agrees with Atkins' assertion that maltitol and other sugar alcohols have a net energy value of zero. Atkins conceals this fact from consumers, and does not disclose this fact in its labeling or representations to consumers.

28. In the study "Sugar Alcohols and Diabetes: A Review,"[4] Dr. Thomas Wolever explained:

> Some people may believe that products sweetened with sugar alcohols allow for more variety in food choices, and, hence, increased quality of life for people with diabetes. However, there is *no evidence* that sugar alcohol-sweetened products have any benefit on long-term glycemic control in people with diabetes.
> …
> The rationale behind the use of sugar-alcohol sweetened products for weight management is that they reduce both the energy and sugar contents of confectionary. However, the reduction in energy content is not large[.] … Most sugar alcohols have an energy content 1.0 to 2.0 kcal/g less than sucrose or other carbohydrates, and since tolerance for sugar alcohol intake is limited, their impact on overall energy balance is likely to be, at most, approximately 20 to 40 kcal/day.

Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362.

29. In 2004, Dr. Wolever explained that, despite claims to the contrary by some low-carb advocates, maltitol raises blood sugar significantly. "Sugar alcohols have come on the market quite aggressively and it's very confusing," Dr. Wolever said. "The science is not good. …. [I]t's a big misconception to say maltitol does not raise blood sugar."

---

[2] See http://www.mayoclinic.org/diseases-conditions/diabetes/expert-answers/artificialsweeteners/faq-20058038.

30. Thus, experts agree: carbohydrates derived from sugar alcohols (1) impact blood sugar, and (2) should be included in the carbohydrate count for products. Atkins conceals this information from consumers.

### The Term "Net Carbs" is Misleading

31. The FDA has not regulated the phrase "net carb" but has affirmatively stated that it "ha[s] concerns that [the] term may be misleading to consumers."[3]

32. The FDA admonished a different company for failing to include maltitol in its carbohydrate count on its label. In a June 20, 2001 letter concerning the product Carbolite, the FDA stated:

> The product is further misbranded because the label bears the claim "Zero Carbohydrate" and the statement "Maltitol . . . . has been omitted from the total carbohydrate content . . . ." Maltitol is a carbohydrate and must be included in the value declared for "Total Carbohydrate" . . .

*See* Food and Drug Administration Warning Letter ONPLDS 20-01 (June 20, 2001).

33. Though the FDA does not formally regulate use of the phrase "net carb," its Canadian counterpart has found that the phrase is "not acceptable due to lack of scientific consensus on … definition and [its] potential to mislead consumers."[4]

34. In another study, Dr. Wolever articulated the same concerns. He wrote, "Food labels of products containing sugar alcohols can be confusing." Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362 at 360 (2002). He elaborated that "individuals who use product labels to count carbohydrates could potentially overestimate the amount of insulin to use for a carbohydrate load. Complicating this

---

[3] *See* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ucm407036.htm.

[4] *See* http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutritionlabelling/carbohydrate-claims/eng/1409844949900/1409845010355.

issue is a lack of consistent labelling, both nationally and internationally, for products containing sugar alcohols." *Id.* at 361.

35. In 2004, Atkins appeared to agree with the consensus that food labels concerning sugar alcohols were misleading. The company announced in 2004 that it would discontinue using the term "net carbs" on its food labels because the term is "imprecise." Sarah Ellison, *Atkins Labels Will Drop Term 'Net Carbs'*, THE WALL STREET JOURNAL, Oct. 6, 2004 (available at http://www.wsj.com/articles/SB109700319191636814). According to the article:

> As low-carb products have proliferated, the food industry has faced increasing skepticism about their nutrient content and labeling. For example, many companies, including Atkins at one time, calculate a products "net carbs" by subtracting grams of fiber and sugar alcohols from the total carbohydrate grams. That calculation allows food makers to cook up starchy, sweet products like brownies, pastries and candy, and call them "low carb." **But one thing the calculation doesn't take into account is that sugar alcohols raise blood-sugar levels, just as "net carbs" do.**

*Id.* (emphasis added).

36. Nonetheless, despite acknowledging that the term "net carbs" is "imprecise" – particularly when it subtracts sugar alcohols from its consideration – Atkins continues to use the term in its labeling and continues to use the formulation that it publicly rejected in 2004.

**Atkins' Conceals Material Facts and Its Representations Are False**

37. Atkins' "net carb" claims are false, misleading, and likely to deceive consumers, such as Plaintiff and members of the Class, in that Atkins' products have multiple times the level of carbohydrates as labeled by Atkins' net carb claim because sugar alcohol continues to have an effect on blood sugar and calories in direct contradiction to Atkins' claims.

38. Plaintiff Amanda Smith purchased the following Atkins products within the applicable time period:

9

a. Blueberry Greek Yogurt

b. Caramel Double Chocolate Crunch

c. Cashew Trail Mix

d. Chocolate Candies

e. Chocolate Caramel Mousse

f. Chocolate Chip Cookie Dough

g. Chocolate Chip Crisp

h. Chocolate Chip Granola

i. Chocolate Coconut

j. Chocolate Covered Almonds

k. Chocolate Hazelnut

l. Chocolate Peanut Butter

m. Chocolate Peanut Butter Pretzel

n. Chocolate Peanut Candies

o. Cinnamon Bun

p. Cookies n' Crème

q. Milk Chocolate Caramel Squares

r. Nutty Fudge Brownie

s. Peanut Butter Cups

t. Peanut Butter Fudge Crisp

u. Peanut Butter Granola

v. Peanut Caramel Cluster

w. Pecan Caramel Clusters

10

x. Strawberry Almond

y. Sweet & Salty Trail Mix

39. Each of the Atkins' products purchased by Plaintiff contained maltitol and were the subject of misleading net carbs claims made by Atkins in the marketing of the products, including but not limited to the product packaging.

40. Plaintiff made her purchases within the State of Missouri.

41. Plaintiff purchased Atkins products for personal, family and household purposes.

42. Each of the Atkins' products purchased by Plaintiff featured packaging that was identical or substantially similar regardless of the product.

43. The front of each package featured a "Net Carbs" claim on the bottom left of the package:



44. Each package also featured an explanation of the Net Carbs calculation that was identical or substantially similar to the following:



45. The statement "Fiber and sugar alcohols should be subtracted from the total carbs since they minimally impact blood sugar" is false. Sugar alcohols do impact blood sugar, particularly maltitol, the sugar alcohol utilized by Atkins.

46. These statements on packaging omit and conceal the true nature of sugar alcohols, i.e., that they do impact blood sugar and that they should be included in any carbohydrate calculation.

47. Plaintiff would not have purchased the products if she had known that maltitol and other sugar alcohols, in fact, impact blood sugar, contrary to Atkins' claims and that the Atkins' products identified herein instead had "net carbs" which were up to eight times higher than the amount claimed by Atkins.

48. Furthermore, ordinary and reasonable consumers would not purchase Atkins' products containing the "net carbs" designation if they knew the facts and information that Atkins concealed from consumers.

12

49. Plaintiff and members of the Class have been economically damaged by their purchase of Atkins' products because they have significantly more carbohydrates that affect the blood sugar and weight gain than the "net carb" amount claimed by Atkins. In this respect, Plaintiff and members of the Class have overpaid for Atkins products containing the "net carbs" calculation that omits sugar alcohols from its calculation.

50. At a minimum, Plaintiff contends that Defendant should cease labeling its products with a "net carb" calculation that assigns a value of zero to sugar alcohols.

## TOLLING OF THE STATUTE OF LIMITATIONS

51. Any applicable statute of limitations that might otherwise bar any Class member's claim has been tolled by Atkins' knowing and active concealment of the facts alleged above.

52. Any applicable statute of limitations that might otherwise bar any Class member's claim or portion of the Class member's claim has been tolled by the commencement of a class action based on same or similar allegations in the matter of *Johnson, et al. v. Atkins Nutritionals, Inc.*, No. 2:16-cv-4213-MDH, filed against Defendant on June 15, 2016, pending in the Western District of Missouri. *See American Pipe & Construction Co. v. State of Utah*, 414 U.S. 538 (1974). Plaintiff is member of the *Johnson* Class and is therefore entitled to *American Pipe* tolling.

## CLASS ACTION ALLEGATIONS

53. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

54. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims on behalf of the following class:

> Purchasers in Missouri of Atkins' products that were labeled and marketed with the "net carbs" calculation that contained sugar alcohols.

55. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

56. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

57. **Numerosity – Fed. R. Civ. P. 23(a)(1).** Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery. Class members may be notified of the pendency of this action by mail or by published notice or other appropriate methods.

58. **Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. 23(a)(2); 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

    a. Whether Defendant's practices and representations related to the marketing, labeling, and sales of the products were unfair, deceptive, and/or unlawful in any respect, thereby violating Missouri's Merchandising Practices Act;

    b. Whether Defendant's practices and representations to the marketing, labeling, and sales of the Product constituted a breach of express warranty in violation of Missouri law;

c. Whether Defendant's conduct constituted unjust enrichment in violation of Missouri law;

d. Whether Defendant's conduct as set forth above injured consumers and, if so, the extent of the injury;

e. Whether this case may be maintained as a class action under Fed. R. Civ. P. 23;

f. Whether and to what extent Class members are entitled to damages and other monetary relief;

g. Whether and to what extent Class members are entitled to equitable relief, including declaratory relief, restitution, and/or rescission, and

h. Whether and to what extent Class members are entitled to attorneys' fees and costs.

59. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased the Product at issue in the litigation. Plaintiff's claims are typical of the claims of the members of the Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

60. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

61. **Superiority – Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would

15

thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

62. Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Atkins; and/or

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## COUNT I
**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**Mo. Rev. Stat. §§ 407.010** *et seq.*

63. Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

64. The Missouri Merchandising Practices Act ("the Act") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of

16

any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020.1.

65. The enabling regulations for the Act define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

66. Under the Act, the term "merchandise" is broadly defined to include "any objects . . . or services." Mo. Rev. Stat. § 407.020.4.

67. The Act authorizes private causes of action, and class actions. Mo. Rev. Stat. §§ 407.025.1; 407.025.2.

68. Plaintiff purchased Atkins' products labeled and marketed with the "net carbs" calculation for personal, family, or household purposes within the meaning of the Act.

69. Atkins practice of misrepresenting and misstating the "net carbs" calculation in its products is an unfair practice within the meaning of the Act.

70. Furthermore, Atkins' practice of omitting and concealing material facts concerning its "net carbs" calculation is an unfair practice within the meaning of the Act.

71. As a result of Defendant violating the Act, Plaintiff and others sustained an ascertainable loss of money when they overpaid for Atkins' products labeled and marketed with the "net carbs" calculation.

72. Defendant's violations of the Act were willful and knowing.

73. Plaintiff and Class members seek actual damages; a declaration that Atkins' methods, acts and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*; restitution; rescission; disgorgement of all profits obtained from

17

Atkins' unlawful conduct; pre and post-judgment interest; and attorneys' fees and costs.

## COUNT II
### BREACH OF EXPRESS WARRANTY
### Mo. Rev. Stat. § 400-2-313.1(a)

74. Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

75. Plaintiff formed a contract with Atkins at the time Plaintiff purchased products labeled and marketed with the "net carbs" calculation. The terms of that contract include the promises and affirmations of fact that Atkins makes on its products packaging and through marketing and advertising. Atkins' marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Atkins, on the one hand, and Plaintiff and the Class, on the other hand.

76. In addition or in the alternative to the formation of an express contract, Atkins made each of its above-described representations to induce Plaintiff and other members of the Class to rely on such representations, and they each did so rely (should be presumed to have relied) on Atkins' representations as a material factor in their decisions to purchase Atkins' products labeled and marketed with the "net carbs" calculation.

77. At all times relevant to this action, Atkins has breached its express warranties about products labeled and marketed with the "net carbs" calculation because those products wrongfully discount the carbs associated with sugar alcohols and contain carbohydrates that are omitted and/or misrepresented in Atkins' packaging and advertising.

78. Atkins' conduct is in violation of Missouri's express warranty law, codified at Mo. Rev. Stat. § 400-2-313.1(a).

79. Section 400-2-313.1(a) does not require privity of contract to recover for breach of express warranty.

80. Plaintiff and members of the Class were injured as a direct and proximate result of Atkins' breach because (a) they paid a price premium due to the misrepresentations and omissions of material fact on Atkins' packaging and in Atkins' marketing and advertising of products labeled and marketed with the "net carbs" calculation, and (b) Atkins' products labeled and marketed with the "net carbs" calculation did not have the composition, attributes, characteristics, or value promised.

### COUNT III
#### UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

81. Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

82. As a direct and proximate result of Atkins' conduct regarding the marketing and sale of its products labeled and marketed with the "net carbs" calculation, Plaintiff and members of the Class paid a price premium for the products.

83. By virtue of paying the price premium, Plaintiff and the Class conferred upon Defendant a benefit to the detriment of Plaintiff and the Class.

84. Atkins realized and appreciated the benefit it received from the unauthorized price premium that it charged to Plaintiff and the Class.

85. Atkins has been unjustly enriched in violation of Missouri law in retaining the revenues derived from the price premium paid by Plaintiff and the Class.

86. Atkins' retention of these unjust payments would be inequitable, and Atkins owes restitution to Plaintiff and the Class on account of its unjust enrichment.

87. Plaintiff and the Class seek judgment in their favor and against Defendant in such amount as is fair and reasonable, an award of reasonable attorneys' fees, and costs and expenses.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED: January 3, 2018

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Matthew L. Dameron
Matthew L. Dameron, MO Bar No. 52093
Amy R. Jackson, MO Bar No. 70144
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 945-7135
Facsimile: (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

**BARNES & ASSOCIATES**

/s/ Jay Barnes
Jason "Jay" Barnes, Mo. Bar #57583
219 E. Dunklin Street, Suite A
Jefferson City, MO 65101
Telephone: (573) 634-8884
Fax: (573) 635-6291
jaybarnes5@zoho.com

*Counsel for Plaintiff and the Proposed Class*