# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| AMANDA SMITH, | ) | |
| CHERYL FERNANDEZ, | ) | |
| JOSEPH COLELLA, | ) | |
| JOSEPH TIMMERMAN, | ) | |
| KELLY STYLES LONGO, | ) | |
| SANDRA STYLES-HORVATH, | ) | |
| JOHANA GARCIA, and | ) | |
| SHARON MARIE BETSELL, | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-CV-04004-MDH |
| | ) | |
| ATKINS NUTRITIONALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY SETTLEMENT APPROVAL

DATED: November 7, 2019

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

Matthew L. Dameron (MO Bar No. 52093)
Amy R. Jackson (MO Bar No. 70144)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel: (816) 945-7110
Fax: (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

**SIMMONS HANLY CONROY**

Jason "Jay" Barnes (MO Bar No. 57583)
231 South Bemiston, Suite 525
St. Louis, Missouri 63105
Tel: (573) 418-0719
jaybarnes@simmonsfirms.com

***Counsel for Plaintiffs and the Proposed Settlement Class***

# TABLE OF CONTENTS

I.     Procedural History and Settlement Overview ........................................................................ 2

II.    Legal Standard ...................................................................................................................... 7

III.   The Settlement Approval Process ......................................................................................... 8

IV.    The Settlement Satisfies Rule 23(e)'s Factors ..................................................................... 9

   A.   The Settlement Class Representatives and Class Counsel have adequately    represented
   the Settlement Class. ..................................................................................................................... 9

   B.   The settlement was negotiated at arm's length. ............................................................. 11

   C.   The relief provided for the Settlement Class is adequate. .............................................. 12

      1.   *The costs, risks, and delay of trial and appeal.* ....................................................... 12

      2.   *The effectiveness of administration.* ......................................................................... 15

      3.   *The proposed attorney's fees.* ................................................................................... 16

      4.   *The proposal treats class members equitably.* ......................................................... 19

   D.   The Experience and Views of Counsel. ......................................................................... 20

   E.   The Requested Service Awards Are Reasonable. .......................................................... 21

V.     Class Certification for Settlement Purposes Is Appropriate ............................................... 23

   A.   Plaintiffs' Claims Satisfy Rule 23(a). ............................................................................ 24

      1.   *The Settlement Class Satisfies Numerosity.* ............................................................. 24

      2.   *Common Issues of Law or Fact Will Govern the Litigation.* ................................... 24

      3.   *Plaintiffs' claims are typical.* ................................................................................... 25

      4.   *Plaintiffs and Class Counsel are adequate.* ............................................................ 26

   B.   The Settlement Class Satisfies Rule 23(b)(3). ............................................................... 26

      1.   *Questions of law or fact predominate.* ..................................................................... 27

      2.   *The Settlement Class satisfies superiority.* ............................................................... 28

VI.    Conclusion .......................................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .................................................. 25

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 23, 26, 27

*Amgen, Inc. v. Comm. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) ........................... 27

*Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008).......... 11

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-04321, 2013 WL 3872181 (W.D. Mo. July 25, 2013) ............................................................................................................................ 28

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ................................................................................................................................................ 7

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ............................................................... 27

*Boeing Co. v. Van Gemert*, 444 U.S 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980).................... 17

*Bruno v. Quten Research Inst., LLC*, No. SACV11-173, 2013 WL 990495 (C.D. Cal Mar. 13, 2013) ........................................................................................................................... 14, 15

*Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 (W.D. Mo. June 11, 2015)......... 22

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005).................................................................. 7

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................................... 23

*Cope v. Let's Eat Out Inc.*, 319 F.R.D. 544 (W.D. Mo. 2017)................................................ 25, 28

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D. Mo. 2014)............................... 24, 25

*Day v. Celadon Trucking Servs.*, Inc., 827 F. 3d 817 (8th Cir. 2016) ......................................... 27

*DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171 (8th Cir. 1995) ........................................................ 25

*Guttmann v. Ole Mexican Foods, Inc.*, 14-CV-04845, 2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ............................................................................................................................... 13

*Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) ................................................................................................ 18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................ 17

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ...................................... 20

*In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002) ................... 17

*In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................................................................................ 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .............................................................................................................................................. 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ......................... 18

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................................................................................................... 15

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180 (S.D.N.Y. 2003) ................. 16

*In re Serzone Products Liability Litig.*, 231 F.R.D. 221 (S.D. W.Va. 2005) ................................ 15

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) ............................................................ 17

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ............................................................................................................................................. 7

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005). 17, 18

*Johnson v. Casey's Marketing Company*, No. 15-03086, 2015 WL 12806576 (W.D. Mo. Dec. 12, 2015) ............................................................................................................................... 18, 22

*Johnson v. Comerica Mortg. Corp*, 83 F.3d 241 (8th Cir. 1996) ................................................. 17

iv

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003)..........................................................................8

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) 7

*Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ...............................................11

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ...............................................7

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)....................................................28

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) ...............................................................27

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982) ..........................................................26

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...................................................7, 17

*Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018)................22

*Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413 (W.D. Mo.

    Nov. 16, 2011) ........................................................................................................................20

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082 (E.D. Mo.

    Dec. 8, 2009).............................................................................................................................8

*Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222 (W.D. Mo. Nov. 16, 2011)..............7

*Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) .....................22

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .........................................................27

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .........................................16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................24

*Xcel Energy*, 364 F. Supp. 2d ......................................................................................................17

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010)................................17

**Rules**

Fed. R. Civ. P. 23(b)(3)..............................................................................................23, 26, 27, 28

Fed. R. Civ. P. 30(b)(6)................................................................................................................10

Federal Rules of Civil Procedure 23(c)(2) and 23(e)....................................................... 15

Rule 23 ............................................................................................................................ 15

Rule 23(a).......................................................................................................................... 24

Rule 23(a)(2)...................................................................................................................... 24

Rule 23(a)(3)...................................................................................................................... 25

Rule 23(a)(4)...................................................................................................................... 26

**Other Authorities**

2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) ................. 18

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2011).. 8

4 Newberg on Class Actions § 11.41 ............................................................................ 7

After extensive litigation in three jurisdictions and extended arms-length negotiations, the parties have reached an agreement to settle this litigation, on a nationwide basis. As set forth herein, the settlement is fair, reasonable and beneficial to members of the Settlement Class, as defined herein.

The settlement provides substantial relief, in several forms, to the Settlement Class. Defendant Atkins Nutritionals has agreed to: (1) relabel all of its products that are encompassed by this litigation (those containing sugar alcohols or glycerin), remove the statement that three courts held that the Plaintiffs could challenge as misleading (regarding the effect of sugar alcohols or glycerin on blood sugar), and not make that statement on future product packaging; (2) discontinue 12 (twelve) products that contained maltitol, the particular sugar alcohol at the center of this litigation, and an injunction prohibiting reintroduction of those products for at least two years; (3) undertake efforts to reformulate 11 (eleven) products to reduce or eliminate their maltitol content, and an injunction prohibiting the reintroduction of maltitol in such products for at least two years, (4) establish a settlement fund to compensate eligible Settlement Class members who purchased products containing more than 10 grams of maltitol, and (5) make a payment up to $500,000 to the American Diabetes Association, as a *cy pres* recipient, if the total amount of cash payments is below that amount.

The total value of the settlement is at least $8.2 million, using a conservative estimate. This reflects only a combination of (1) the common fund of $3.8 million including for cash payments to Settlement Class members, and (2) the cost of the injunctive relief (the relabeling, discontinuance, and reformulation obligations and prohibitions described above) i.e., without regard to the additional value to the Settlement Class of the injunctive relief itself stemming from the removal of the statements Plaintiffs have alleged were misleading.

In short, the settlement addresses the central allegations of this litigation that certain Atkins Nutritionals' products misled consumers regarding the impact of sugar alcohols, including maltitol, on blood sugar, and achieves the primary relief sought by Plaintiffs, i.e., guaranteed, enforceable changes to Atkins Nutritionals' business practices. The settlement *also* provides monetary relief for consumers who purchased Atkins Nutritionals products that contained more than 10 grams of maltitol, the sugar alcohol most central to the litigation.

While Atkins Nutritionals denies the allegations in the litigation, it has agreed to the settlement reflected herein, and does not oppose Plaintiffs' Motion for Preliminary Approval of the Settlement.

Accordingly, and because the settlement is eminently fair, adequate and reasonable, Plaintiffs respectfully move the Court for preliminary approval of the settlement.

## I.    PROCEDURAL HISTORY AND SETTLEMENT OVERVIEW

Plaintiffs commenced and prosecuted several putative class actions against Atkins Nutritionals. The remaining three are captioned:

- *Smith v. Atkins Nutritionals*, Inc., Case No. 2:18-CV-04004-MDH (the "Smith Action"), pending in the Western District of Missouri;

- *Colella et al. v. Atkins Nutritionals, Inc.*, Case No. 17-cv-5867-KAM-SJB (the "Colella Action"), pending in the Eastern District of New York; and

- *Fernandez v. Atkins Nutritionals, Inc.*, Case No. 3:17-cv-01628-GPC-WVG (the "Fernandez Action"), pending in the Southern District of California (collectively, the "Actions").[1]

---

[1] This first putative class action commenced by Plaintiffs' counsel against Atkins Nutritionals was *Johnson v. Atkins Nutritionals, Inc.*, filed in this Court in 2016. After two years of extensive litigation including motion practice, discovery, and experts, Johnson was voluntarily dismissed and then effectively replaced by this action (*Smith*). The *Fernandez* (California) and *Colella* (New York) cases followed.

2

The Actions involved similar claims against Atkins Nutritionals related to its marketing and sale of its products containing sugar alcohols and/or polyols. Each Action pursued class-wide relief on behalf of consumers in each respective state.

Each Action involved extensive motion practice including multiple motions to dismiss in each case. Each Court held that Plaintiffs' challenges to the Atkins Nutritionals' calculation of its "net carbs" formula were preempted in part under federal law and could not be challenged in a civil action, but that Plaintiffs could pursue claims against Atkins Nutritionals that its statements on product packaging that sugar alcohols or glycerin "minimally impacts blood sugar" are misleading. Through the course of discovery, the parties exchanged several rounds of written discovery, as well as production and review of voluminous documents. Additionally, the parties engaged in deposition discovery.

On February 6, 2019, the parties mediated the Actions before the Honorable Jay Daugherty (Ret.); Judge Daugherty is a recognized class action mediator based in Kansas City.[2] The parties did not reach a settlement on February 6. However, in conjunction with and with assistance from Judge Daugherty, they continued their settlement discussions, and agreed in principle to a settlement nearly two months later on April 5. The parties circulated the settlement agreement through many rounds of edits, calls, and further negotiations, and the final settlement agreement was fully executed in October 2019. A copy of the fully executed Settlement Agreement is attached hereto as Exhibit 1.

Plaintiffs and counsel believe the claims asserted have merit and that the evidence developed to date supports the claims asserted. Plaintiffs and counsel, however, also recognize the

---

[2] As noted below, this was the parties' fourth collective attempt at alternative dispute resolution in these actions, including with a private neutral in Kansas City (Mag. Judge Maughmer) of this Court, and the Magistrate Judge in *Fernandez*.

risks, costs, and delay of further proceedings in complex cases like this, have evaluated the specific defenses asserted by Atkins Nutritionals and the three Courts' rulings in these cases to date, and believe that the settlement confers substantial benefits upon the class members. Defendant denies Plaintiffs' claims in their entirety and denies any wrongdoing, but wishes to avoid the uncertainty, costs, and risks attendant with further litigation.

The main terms of the agreement are as follows:

1. As one part of the injunctive relief, Atkins Nutritionals agrees to relabel *all* of its products containing sugar alcohols or polyols, including removal of the statement that sugar alcohols "minimally impact blood sugar" – the prime point of contention and the only statement about which the three Courts held Plaintiffs could pursue civil (non-preempted) claims in the Actions. Atkins also agrees not to re-introduce such a statement for at least two years following the conclusion of the litigation. This was the primary relief sought by Plaintiffs in the Actions.

2. Furthermore, Atkins Nutritionals has agreed to discontinue 12 products with maltitol, the primary sugar alcohol at issue in the Actions, and to not re-introduce these products for at least two years.

3. Atkins Nutritionals *also* has agreed to undertake efforts to reformulate 11 products to reduce or eliminate maltitol altogether from the products, and to not re-introduce maltitol in such products for at least two years.

4. Additionally, the settlement creates a common fund of $3,800,000, for cash payments to eligible members of the Settlement Class, as well as administrative costs and attorneys' fees and expenses. The Cash Awards are redeemable for each of the Class Members' purchases of Atkins Nutritionals products containing more than 10 grams of maltitol.

5. If the total amount of the Cash Awards is less than $500,000, then Atkins Nutritionals shall donate to the American Diabetes Association as a *cy pres* recipient the lesser of: (a) the difference between total amount of Cash Awards and $500,000, or (b) the amount remaining in the common fund after deduction of certain expenses.

6. Notice will be provided pursuant to a comprehensive, nationwide online notice campaign carried out by a Claims and Notice Administrator with extensive experience in such marketing efforts (the CPT Group), and includes the establishment of both a settlement website and a toll-free phone number where Class Members can learn more about the settlement and its terms, how to object to or opt-out of the settlement, and a method and instructions for electronically submitting a claim.

7. Settlement Class members may opt-out of the Settlement Class at any time during the Opt-Out Period.

4

8.    Payments from the cash fund will be based on claims submitted by Settlement Class members and approved by the Administrator.

9.    Eligible Settlement Class members who submit a timely and valid claim (whether by mail or online) will receive a settlement check or direct deposit from the cash fund noted above.

10.    Plaintiffs' counsel seeks attorneys' fees in the amount of twenty-five percent (25%) of the *minimum* total settlement value (i.e., fees of $1.7 million). Plaintiffs' counsel also will seek costs of no more than $40,000. Atkins Nutritionals has agreed not to object to this fee request, provided that it did not exceed a capped amount based on only the cash fund plus a conservative (low) estimate of the costs (but not additional value to the public) of the injunctive relief.

11.    The Settlement Class Representatives seek, in recognition of their service contributions, the following amounts: $10,000 each for Amanda Smith and Cheryl Fernandez; $5,000 for Joseph Colella; and $3,000 each for Joseph Timmerman, Kelly Styles Longo, Sandra Styles-Hovarth, Johanna Garcia and Sharon Marie Betsill.

Regarding the injunctive relief (items 1 through 3 above), Atkins Nutritionals has agreed to modify the labeling, discontinue, and/or reformulate its products containing sugar alcohols or polyols, and to injunctions prohibiting the reintroduction of such labeling statements, products, and ingredients, as follows:

| Injunctive Remedy | Affected Atkins Nutritionals Products |
|---|---|
| Remove the statement that sugar alcohols or polyols "minimally impact blood sugar," and not reintroduce statement for at least two years | All products containing sugar alcohols or polyols |
| Discontinue and not reintroduce product for at least two years (12  products) | Dark Chocolate Almond Delight Snack Bar; Dark Chocolate Decadence Bar; Classic Trail Mix; Marshmallow Mudslide Bar; Cinnamon Bun Meal Bar; Strawberry Almond Meal Bar; Chocolate Oatmeal Fiber Bar; Chocolate Hazelnut Snack; Sweet and Salty Trail Mix; Coconut Almond Delight; Dark Chocolate Almond Coconut Crunch; and Cashew Trail Mix |
| Reformulate to eliminate maltitol entirely, and not reintroduce maltitol for at least two years (9 products) | Chocolate Chip Granola Meal Bar; Chocolate Peanut Butter Meal Bar; Peanut Butter Granola Meal Bar; |

| | Blueberry Greek Yogurt Bar;<br>Chocolate Peanut Butter Pretzel;<br>Triple Chocolate Snack Bar;<br>Caramel Double Chocolate Crunch Snack Bar;<br>Chocolate Chip Crisp Snack Bar; and<br>Cranberry Almond Snack Bar |
|---|---|
| Endeavor to reformulate to eliminate or reduce maltitol, and not revert to prior formulations for at least two years (2 products) | Caramel Nut Roll Snack Bar, and<br>Caramel Chocolate Peanut Nougat Snack Bar |

Thus, the injunctive relief offered by the settlement materially impacts the labeling of *all* Atkins' Nutritionals products with sugar alcohols or polyols, and additionally mandates either the outright elimination (discontinuance) or reformulation of 23 products, with a prohibition on reintroducing such products or ingredients. Atkins Nutritionals estimates that its minimum *costs* of this injunctive relief alone (without considering the cash settlement fund) are $4.4 million. *See* Affidavit of L. Zink, attached hereto as Exhibit 2. Notably, that assessment of injunction *costs* does not account for the substantial *value* to the settlement class (and public as a whole) in removing the allegedly misleading product packaging statements, ensuring that such statements will not be introduced, and thereby achieving the litigation's goal product packaging that is more understandable to consumers and competitively fair. For the purposes of capping the amount of fees that Plaintiffs' Counsel can seek in the settlement, however, the parties have agreed to value the injunctive relief at $3 million.

Especially when combined with the available cash payments for purchases of Atkins Nutritionals' products containing more than ten grams of maltitol, the settlement offers considerable and meaningful relief to consumers, achieves the primary relief sought by Plaintiffs in bringing these cases, and involves the only labeling statements that all three Courts held Plaintiffs could challenge in a civil action. Accordingly, the Court should preliminarily approve the settlement and authorize notice as set forth herein.

## II.  LEGAL STANDARD

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A Settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Moreover, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in litigating and settling complex cases, including class actions, settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.,* No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

7

Plaintiffs' Motion follows the factors outlined in Rule 23(e) but also addresses miscellaneous factors previously analyzed by this and other courts. Under any standard, the settlement is fair, reasonable, and adequate.

### III.  THE SETTLEMENT APPROVAL PROCESS

Approval of a Rule 23 class settlement involves a two-step process. MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2011); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)).

During the first step, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation. If the court is likely to approve the settlement, then it should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which objections may be heard (the second step). *See* Manual § 21.633; Rule 23(E)(1).

This case is at the first stage of the settlement process, often called "preliminary approval" where the Court decides whether it is likely to approve the settlement such that notice of the settlement should be sent to the class. The newly-amended Rule 23(e)(1) states that in order to send notice of settlement to the class, the Court must first find that the Court will likely:

1) "approve the proposal under Rule 23(e)(2)"; and

2) "certify the class for purposes of judgment . . .."

At this first step of the process, Plaintiffs request that the Court grant "preliminary approval" of the Rule 23 settlement and order that notice should be sent to the class; consistent with the settlement, Atkins Nutritionals does not object to Plaintiffs' request.

## IV. THE SETTLEMENT SATISFIES RULE 23(E)'S FACTORS

In evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus on the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approval the proposal." 2018 Advisory Committee Notes.

### A. The Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class.

The Settlement Class Representatives and Class Counsel have adequately represented the Settlement Class since the litigation was commenced in 2016. In three different jurisdictions, Class

Counsel have engaged in extensive motion practice concerning Atkins Nutritionals' efforts to have the Actions dismissed; these efforts involved complicated and nuanced questions of preemption and the scope of the applicable consumer protection statutes. When appropriate, Class Counsel have amended the pleadings to conform to each court's respective decisions concerning dismissal (including with respect to which labeling statements could, and which could not, be challenged in a civil action). Class Counsel have vigorously pursued discovery, resulting in the production of thousands of documents by Atkins Nutritionals, and the deposition of Atkins Nutritionals' corporate representative under Fed. R. Civ. P. 30(b)(6). Class Counsel also have engaged with Plaintiffs in responding to discovery propounded by Atkins Nutritionals. Class Counsel have diligently prosecuted the Actions for three years in three different venues, and they have ably represented the Settlement Class' interests in the litigation.[3]

Similarly, Plaintiffs have actively participated in the litigation, including responding to written discovery (Smith and Fernandez); assisting with other discovery; and participating in alternative dispute resolution proceedings, including personally attending the early neutral evaluation in California and the mediation in Kansas City (Fernandez in California, both Smith and Fernandez in Kansas City).

After significant litigation and extensive negotiation, the parties reached a proposed agreement on behalf of the following class:

> All persons who: (1) purchased a Subject Product, (2) during the applicable Purchase Period, (3) anywhere in the United States.

> "Subject Products" means any Atkins Nutritionals products that contained any sugar alcohol (including but not limited to maltitol) or polyol (including but not limited to glycerin) that were sold anywhere in the United States during the Purchase Period.

---

[3] As set forth in the proposed Order accompanying this Motion, Plaintiffs request that the Court appoint Matthew L. Dameron, Amy Jackson, and Jason "Jay" Barnes as Class Counsel.

"Purchase Period" is from January 1, 2013 to the Claim Deadline for purchases in Missouri, California, or New York, and from January 1, 2014 to the Claim Deadline for purchases in any other U.S. state or territory.

**B.    The settlement was negotiated at arm's length.**

The settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

After three years of vigorous litigation, the settlement was honestly and fairly negotiated by competent counsel and involved the assistance of a well-respected mediator. Atkins Nutritionals disagreed with Plaintiffs' legal and factual positions at every step, including on several threshold issues such as preemption. The parties litigated in three different jurisdictions, participated in depositions, and exchanged significant amounts of written discovery.

The parties' dispute resolution efforts also reflect the arms-length nature of the settlement. Prior to their successful mediation in early 2019, the parties engaged in several alternative dispute resolution mechanisms, including an Early Neutral Evaluation performed by a private mediator in 2016, an Early Case Evaluation before U.S. Magistrate Judge William Gallo (the Magistrate Judge assigned to the Fernandez case) in 2018, and a settlement conference with the Hon. John T. Maughmer of this Court; none of these efforts were successful. Only after additional, vigorous and contested litigation did the parties agree to mediate the cases on a global basis with Judge

11

Daugherty. The mediation with Judge Daugherty lasted in excess of twelve hours and then continued well beyond the initial mediation date. In fact, the parties did not reach an agreement in principle until two months later and after several more rounds of discussions with the mediator. The parties then continued to negotiate the entirety of the final settlement agreement over several more months. Under these circumstances it cannot be questioned that the agreement was reached at arm's length.

### C. The relief provided for the Settlement Class is adequate.

This settlement provides significant relief to Settlement Class members and compensates them fairly for their claims and is well within the range of settlements of similar cases, particularly in light of the following factors:

#### 1. *The costs, risks, and delay of trial and appeal.*

The parties naturally dispute the strength of Plaintiffs' cases, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification, a denial of decertification, and recovery on the merits. Plaintiffs' worst-case scenario is that the class certification under Rule 23 is denied for the state law claims, summary judgment is granted to Defendant, and/or Plaintiffs lose at trial. Even if these cases were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions may remain as to the measure of damages and the entitlement of each Settlement Class member to recover. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties weigh in favor of a guaranteed resolution of the litigation.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The remaining

discovery, certification briefing, summary judgment, trial and appeal would consume significantly more time and resources. Plaintiffs will likely have brought multiple witnesses for several days of preparation and testimony, at great expense to the parties and inconvenience to the witnesses. Moreover, the parties would bring expensive expert witnesses to trial. And regardless of the outcome, a lengthy appeal would be likely.

On the other hand, the settlement ensures that Settlement Class members will recover significant, immediate relief, including that which this litigation primarily sought to achieve, namely, changes to the labels on Atkins Nutritionals' products, and the elimination or reduction of certain sugar alcohols (maltitol) in its products.

Specifically, the settlement guarantees significant equitable relief for class members, which includes: (1) the removal of the "minimal impact" statement from Atkins Nutritionals' packaging that this Court (and the Eastern District of New York and the Southern District of California) found was the sole basis for Plaintiffs' claims; (2) the discontinuance of and prohibition on reintroducing 12 of Atkins Nutritionals' products containing maltitol; and (3) the reformulation of 11 Atkins Nutritionals' products containing maltitol to eliminate or reduce the use of maltitol, and a prohibition on reintroducing that ingredient in those products. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and alone weighs in favor of approving the proposed settlement. *See, e.g., Littlejohn v. Ferrara Candy Company*, No. 18-CV-00658, 2019 WL2514720 (S.D. Cal. June 17, 2019) (approving nationwide settlement of food labeling class action that provided only injunctive relief in the form of labeling changes); *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, 12-MD-02413 (E.D.N.Y. Nov. 14, 2017) (approving nationwide settlement of food labeling class action that provided only injunctive relief); *Guttmann v. Ole Mexican Foods, Inc.*, 14-CV-04845, 2016 WL 9107426, at *1 (N.D. Cal.

Aug. 1, 2016) (approving nationwide settlement of food class action that enjoined defendant from using certain ingredient for multi-year period); *Bruno v. Quten Research Inst., LLC*, No. SACV11-173, 2013 WL 990495, at *4 (C.D. Cal Mar. 13, 2013) (approving class action settlement and noting that "there is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes, which includes benefits not only to class members but also to "the marketplace and competitors who do not mislabel their products").

In addition to this compelling injunctive relief, the settlement also provides monetary relief to class members for purchases of Atkins Nutritionals products that contained more than 10 grams of maltitol during the applicable purchase period (since 2013 for purchases in Missouri, California, or New York, and since 2014 elsewhere). Class members who establish qualifying purchases via a claim form and submit proof of purchase (e.g., receipts, packaging images) will receive cash refunds of 25% of the average national purchase prices of their products, with no per-consumer cap on such refunds. Class members who submit only a claim form (without proof of purchase) will receive 10% cash refunds (with a $100 per-consumer cap on such refunds). Class members will be able to submit claim forms *either* by mail or, conveniently, online.[4] And, because of the *cy pres* provision, the settlement guarantees that Atkins Nutritionals will distribute a significant portion of the cash fund, including up to $500,000 (minus approved cash claims) to the American Diabetes Association.

In sum, the settlement brings substantial and certain injunctive and monetary value to the Settlement Class now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law.

---

[4] Claimants, whether submitting claims with or without proof of purchase, will be subject to a pro rata reduction if the total amount of claims, settlement administration costs, and approved fees, costs and service awards exceed the $3.8 million fund.

## 2. *The effectiveness of administration.*

The parties have agreed to retain CPT Group as the Notice and Claims Administrator ("the Administrator"). CPT's qualifications and the proposed Notice Plan is outlined in the Declaration of Julie Green on behalf of CPT Group, Inc., attached hereto as Exhibit 3.

CPT has extensive experience administering class actions, having serviced over 65,000,000 class members during its 30-year history. Ex. 3 at ¶ 4. Federal courts have entrusted CPT with administering nationwide settlement processes in dozens of cases across the country. *Id.* at ¶ 6.

For this case, the Administrator has formulated a robust notice plan that encompasses several platforms, including a settlement website and multi-layer digital marketing, through which it anticipates reaching in excess of 85% of the Settlement Class. *Id.* at ¶ 13. Indeed, during the notice period, CPT anticipates the campaign will reach approximately 86% of the putative class "on average 2.34 times by serving a total of 34,931,754 gross ad impressions." *Id.*

This extensive notice plan is more than sufficient in a consumer class action like the instant case. *See, e.g.*, *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 236 (S.D. W.Va. 2005) (holding the notice plan designed to effectively reach approximately 80% of class members comports with the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (approving a notice plan that was estimated to reach 81.4% of class members).

The Notice Plan will clearly inform Settlement Class Members of their rights to opt out, to object, or to file a claim, and the mechanisms and deadlines for doing so, and will include all of the information required by Rule 23. The proposed long-form notice is attached hereto as Exhibit 4 for the Court's consideration. It contains all of the information required by Rule 23, and it closely

tracks the model notice promulgated by the Federal Judicial Center, which is the education and research agency for the federal courts. Indeed, the FJC's illustrative notice that forms the basis for the proposed long-form notice in this case is recognized as the leading model for notice in class actions. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 185 (S.D.N.Y. 2003).

After the notice period, the Administrator will be responsible for reviewing all claim forms to determine whether a claim is approved.[5] The Administrator will notify a claimant if his or her claim appears deficient. Upon notification, a Settlement Class member whose claim has been rejected may cure the deficiency in his or her claim within twenty (20) days of the Administrator providing notice of the deficiency. The Administrator will notify a claimant if his or her claim ultimately is rejected.

### 3. *The proposed attorney's fees.*

Pursuant to the Settlement Agreement, Atkins Nutritionals has agreed not to object to or oppose an application by Class Counsel for fees and expenses as long as the application does not exceed thirty-percent (30%) of the "Total Settlement Value" of $6.8 million (the cash fund plus the estimated costs of injunctive relief); in other words, a cap on the amount of fees that Class Counsel may request without objection from Atkins Nutritionals. The attorneys' fee award is scheduled to be distributed to Class Counsel within 30 days after the final approval of settlement – only after all payments to class members have been determined and any objections have been heard.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course,

---

[5] A copy of the proposed Claim Form is attached as Exhibit B to CPT's Declaration.

litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so. When a settlement yields a common fund for class members, fees must be paid from recovery. *Boeing Co. v. Van Gemert*, 444 U.S 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eight Circuit, use of a percentage method of awarding attorneys' fees in a common fund case is not only approved, but also well established." *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnson v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F. Supp. 2d at 1993.

As the Eighth Circuit has recognized, using a percent of the fund approach most closely aligns the interest of the lawyers with the class, since the more that is recovered for the class, the more attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005); *In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).

The amount sought by Class Counsel is well within the range approved by courts in the Eight Circuit and in Missouri; those courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (*quoting In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as

reasonable)); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%).

Indeed, in a previous decision approving class action settlements, *this* Court has approved fee amounts within the range requested by Class Counsel. *Johnson v. Casey's Marketing Company*, No. 15-03086, 2015 WL 12806576 *1 (W.D. Mo. Dec. 12, 2015) (approving up to one-third of the settlement fund).

Class Counsel took this case on a contingency basis, with the real possibility of an unsuccessful outcome and no fee of any kind. When Plaintiffs filed their complaints in 2017 and 2018, it was with no indication that a settlement would be reached or that litigation would be successful. Indeed, those cases followed the original *Johnson* case, filed in 2016, that included rulings by this Court that certain claims were preempted by federal law. Class Counsel has continued to litigate these cases and front all litigation expenses for two more years, three in total.

Class Counsel is also seeking approval of no more than $40,000 for out-of-pocket expenses. These expenses were all necessary in the pursuit of this litigation and the results obtained. These costs were reasonable and necessary. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class.").[6]

---

[6] *See also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.).

#### 4. *The proposal treats class members equitably.*

The settlement treats Settlement Class members fairly and equitably. All Settlement Class Members will receive the benefits of the three forms of injunctive relief: (1) relabeling of *all* Atkins Nutritionals products that are encompassed by this litigation (those containing sugar alcohols or glycerin), (2) discontinuance of 12 products containing maltitol, and (3) reformulation of another 11 products (and prohibitory injunctions as to all forms preventing Atkins Nutritionals from reintroducing these labeling statements, products, and ingredients).

In addition, Settlement Class Members will be entitled to cash awards for their purchases of products containing more than 10 grams of maltitol when they submit valid claim forms.[7] Class Members who provide evidence of purchase including a claim form and a proof of purchase will receive an amount equal to 25% of the average national purchase price for each product purchased with more than 10 grams of maltitol, with *no cap* on the total aggregate amount of cash awards per Settlement Class Member (subject to any pro rata adjustment as provided in the Settlement Agreement). Each Settlement Class member who provides evidence of purchase in the form of only a claim form (but without proof of purchase) shall receive an amount equal to 10% of the average national purchase price of each product purchased with more than 10 grams of maltitol, subject to a cap of $100 in aggregate cash awards per Settlement Class Member (subject to any pro rata adjustment). Thus, the more evidence Settlement Class member claimant has, then the more she will receive.

The proposed Class in the settlement does make a slight distinction based on the states where Actions are pending (Missouri, New York, and California; collectively "Action States") and

---

[7] Cash awards are for purchases of products with more than 10 grams of maltitol because this litigation primarily centers on maltitol and its impact on blood sugar levels and particularly in Atkins Nutritionals' products containing higher amounts of maltitol (i.e., more than 10 grams). See, e.g., *Smith* Compl. (Doc. 1) ¶¶ 18-20, 43-44 (focusing on Chocolate Candies product, which contains 14 grams of maltitol); *Fernandez* Am. Compl. ¶¶ 22-27 (same); *Colella* Second Am. Compl. ¶¶ 28-33,45-47 (same).

19

other states. The Settlement Class definition encompasses an additional year (January 1, 2013 to present) for purchases in the states where Actions are pending; comparatively, the class definition begins a year later (on January 1, 2014) in relation to other states.[8] This distinction accounts for the available statutes of limitations in the Action States because of the pendency of active cases in those states; in other states, no such litigation was pending and thus, no statutes of limitation could have been tolled for those consumers. Accordingly, there is a slight variation among states in the proposed class definition, but that variation is justified based on the distinctive statutes of limitations between Action States and other states.

In all other respects the settlement treats Settlement Class members consistently and fairly. No Settlement Class members receive special treatment, except as specifically explained regarding "Service Awards" to Plaintiffs who have participated in the case.

### D. The Experience and Views of Counsel.

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the Settlement Class

---

[8] Contemporaneously with this motion for preliminary approval, Plaintiffs are moving to stay the *Colella* (E.D.N.Y.) and *Fernandez* (S.D. Cal.) actions. If settlement is finally approved, those actions will be dismissed.

had the benefit of attorneys who are highly experienced in complex class actions litigation and familiar with the facts and law in the case, and who have negotiated many class action settlements. In counsels' view, the settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays and uncertainties of litigation, trial and post-trial proceedings. Further, in counsels' experience, when compared with similar litigation, the relief to the class is substantial.

### E.    The Requested Service Awards Are Reasonable.

Plaintiffs seek service payments for Plaintiff Class Representatives who have participated in the litigation, participated in the multiple mediations and settlement discussions, and provided written discovery responses. The total requested service awards constitute slightly more than 1% of the minimum settlement value funding the following amounts:

- $10,000 each for named Plaintiffs Amanda Smith and Cheryl Fernandez;

- $5,000 for named Plaintiff Joseph Colella; and

- $3,000 each for Plaintiffs Joseph Timmerman, Kelly Styles Longo, Sandra Styles-Hovarth, Johana Garcia, and Sharon Marie Betsill.[9]

Plaintiffs Smith and Fernandez have been active participants in discovery and the litigation for several years, and both of these individuals attended and participated in the mediations and settlement discussions. In fact, Ms. Fernandez traveled to Kansas City from California to participate in the February mediation that ultimately resulted in this settlement, and Ms. Smith

---

[9]  By this motion, Plaintiff Class Representatives respectfully request to be added as named plaintiffs and class representatives in this action (*Smith*).  As detailed immediately below, Plaintiffs Colella, Timmerman, Longo, and Styles-Horvath have been named plaintiffs in the *Colella* action, and Plaintiff Fernandez in the *Fernandez* action. Plaintiffs Garcia and Betsill seek to join this action.  Atkins Nutritionals does not oppose this request.

traveled from Jefferson City to participate. Ms. Fernandez also participated in the Early Neutral Evaluation/settlement conference conducted in San Diego.

Plaintiff Colella also has been an active participant in the litigation and actively participated in litigation for several years since filing his lawsuit. The other plaintiffs (Mr. Timmerman, Ms. Long, and Ms. Horvath) also either participated in the *Colella* litigation (joining as additional plaintiffs following the Eastern District of New York's order to amend that complaint), or, in the cases of Ms. Garcia and Ms. Betsell stood ready to do so via additional litigation against Atkins Nutritionals and have instead opted to join this case as named plaintiffs and class representatives, further strengthening the representation of the proposed *nationwide* class (these Class Representatives collectively are residents of Missouri, California, New York, Florida, and Louisiana).

In light of the small percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the incentive awards be approved. Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 at *2, 7 (W.D. Mo. June 11, 2015) (approving incentive award to named plaintiff in the amount of $14,145); *Johnson*, 2015 WL 12806576 *1 (W.D. Mo. Dec. 12, 2015) (approving the terms of the Settlement agreement, including incentive award to named plaintiff in the amount of $7,500); *Hermsen v. City of Kansas City*, No. 11-753 at Doc. # 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for three class representatives); *Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 at *9 (E.D. Mo. May

25, 2018) (approving service awards of $10,000; $5,000 and $2,500). Given the importance of the assistance provided by Plaintiffs, these service awards are reasonable.

## V.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE.[10]

The second part of Rule 23(e)(1) requires the Court to determine that it is likely to certify the class for settlement purposes. The Advisory Committee comment states:

> One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.

Rule 23 requires that an action satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). And where, as here, Plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

---

[10] Although Atkins Nutritionals does not oppose Plaintiffs' Motion, the company refutes that certification of the proposed Settlement Class is appropriate for any reason other than for effectuating the settlement. *See* Ex. A at § IX(B).

### A. Plaintiffs' Claims Satisfy Rule 23(a).

#### 1. *The Settlement Class satisfies numerosity.*

Here, the proposed Settlement Class is sufficiently numerous. It includes thousands of consumers nationwide who purchased the products listed in the Actions; the proposed Settlement Class easily satisfies the numerosity standard.

#### 2. *Common issues of law or fact will govern the litigation.*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "depend upon a common contention' that 'is capable of class-wide resolution – which means that determination of its truth or facility will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The settlement class satisfies Rule 23 (a)(2)'s commonality requirement. The central issue to every claim is whether it is false or misleading for Atkins Nutritionals to claim on its packaging labels that sugar alcohols, including maltitol, or polyols, have minimal to no impact on blood sugar. While only one common question of law or fact is required, these cases have many others, including:

- Whether Atkins Nutritionals' practices and representations related to the marketing, labeling, and sales of the products were unfair, deceptive, and/or unlawful in any respect;

- Whether Atkins Nutritionals' practices and representations to the marketing, labeling, and sales of the products constituted a breach of express warranty in violation of state law;

- Whether Atkins Nutritionals' conduct constituted unjust enrichment in violation of state law; and

- Whether Atkins Nutritionals' conduct as set forth above injured consumers and, if so, the extent of the injury.

Each of the foregoing questions is common to the Settlement Class because they apply to all Settlement Class members.

### 3. *Plaintiffs' claims are typical.*

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope v. Let's Eat Out Inc.*, 319 F.R.D. 544, 555 (W.D. Mo. 2017) (citing *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Id*. (citations omitted). In assessing typicality, courts consider whether the named plaintiffs' claim "arising from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Finally, "[t]ypicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

The typicality requirement is satisfied here because Plaintiffs assert the same claims individually that they assert on behalf of the Settlement Class. Each putative class representative purchased Atkins Nutritionals products containing the alleged false and misleading claims that sugar alcohols, including maltitol, have a minimal impact on blood sugar. Plaintiffs uniformly alleged that Atkins's practices and representations related to the marketing, labeling, and sales of their products was unfair, deceptive, and/or unlawful. This applies equally across the board. Moreover, the class representatives are not subject to a unique defense that could destroy typicality. Thus, Plaintiffs' claims are indistinguishable from those of the Settlement Class and they satisfy the typicality requirement.

#### 4. *Plaintiffs and Class Counsel are adequate.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted). The focus is on whether (1) the class representatives have common interests with class members, and (2) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

Here, Plaintiffs have no interest that is antagonistic to, or conflicting with, the interests of the Settlement Class. To the contrary, Plaintiffs' interests are coextensive of those of the proposed Settlement Class members in establishing liability and damages. Further, Plaintiffs have retained qualified attorneys who are experienced in class action litigation. Plaintiffs' counsel has prosecuted numerous class action lawsuits on behalf of thousands of individuals. Moreover, the class representatives and Class Counsel have demonstrated their service to the Settlement Class over the past three-plus years of prosecuting the classes' interests. Thus, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### B. The Settlement Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs' proposed Class satisfies both the "predominance" and "superiority" requirements of Rule 23(b)(3).

26

### 1. *Questions of law or fact predominate.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It does not require that each element of the plaintiffs' claims be susceptible to class-wide proof. *Amgen, Inc. v. Comm. Retirement Plans & Trust Funds*, 568 U.S. 455, 469 (2013). It also does not require that the common questions will be answered, "on the merits," in favor of the class. *Id*. at 459-60. Rather, when determining whether common questions predominate, the court asks whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005). And, importantly, when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs.*, Inc., 827 F. 3d 817, 833 (8th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In evaluating predominance, courts are mindful that "[p]redominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal citation omitted).

Common questions predominate in establishing Defendant's liability under Plaintiffs' claims. To prevail, Plaintiffs must establish that practices and representations related to the marketing, labeling, and sales of the products are unfair, deceptive, and/or unlawful. The answer to these questions will predominate over all other questions in the case. The essential factual and legal issues regarding the Settlement Class members' claims are common, and relate to the alleged marketing tactics of Atkins Nutritionals. Further, given the standardization of Atkins Nutritionals'

marketing for its products nationwide, the questions of whether marketing, labeling, and sales of the products were unfair, deceptive, and/or unlawful could be adjudicated on a class-wide basis. Thus, it is unlikely that any individual issues would remain. However, even if any individual questions were to remain they would be outweighed by the common questions at issue.

### 2. *The Settlement Class satisfies superiority.*

In addition to predominance, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority analysis "requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc." *Cope*, 319 F.R.D. at 557. However, "dismissal for management reasons is never favored....[and] lack of manageability justifies denial of certification 'only where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-04321, 2013 WL 3872181, at *15 (W.D. Mo. July 25, 2013) (citations omitted).[11]

Consolidating all claims into a single litigation is in the best interest of the Settlement Class members and the court system. Indeed, it would be judicially inefficient for these claims to be spread among multiple jurisdictions given that the same legal theories and evidence will be used by all Settlement Class members. And prosecuting the exact same claims across multiple jurisdictions runs the risk of creating inconsistent rulings on identical claims. It is, therefore, desirable to consolidate those claims in this Court. Class Counsel will be able to present this case on a class-wide basis as efficiently as on an individual basis, and in less time than prosecuting multiple claims in different jurisdictions.

---

[11] *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (noting it is a "well-settled presumption" that "courts should not refuse to certify a class merely on the basis of manageability concerns") (citing cases).

## VI.  CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement.  It achieves the goals of the litigation, benefits the entire class and the public, and accounts for the risks and uncertainties of continued, vigorously contested litigation.  Plaintiffs, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1, in whole and without delay. Plaintiffs have submitted a proposed Order for the Court's consideration contemporaneous with this Motion.

DATED: November 7, 2019                      Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Matthew L. Dameron*
Matthew L. Dameron (MO Bar No. 52093)
Amy R. Jackson (MO Bar No. 70144)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
Fax:    (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

**SIMMONS HANLY CONROY**
Jason "Jay" Barnes (MO Bar No. 57583)
231 South Bemiston, Suite 525
St. Louis, Missouri 63105
Tel: (573) 418-0719
jaybarnes@simmonsfirms.com

***Counsel for Plaintiffs and the Proposed Settlement Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November 2019, the proceeding was filed using the Court CM/ECF System, which will provide notice of the same to all counsel of record.

*/s/ Matthew L. Dameron*
Counsel for Plaintiffs

29