## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| AMANDA SMITH,<br>CHERYL FERNANDEZ,<br>JOSEPH COLELLA,<br>JOSEPH TIMMERMAN,<br>KELLY STYLES LONGO,<br>SANDRA STYLES-HORVATH,<br>JOHANA GARCIA, and<br>SHARON MARIE BETSELL,<br>individually and on behalf of all<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATKINS NUTRITIONALS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:18-CV-04004-MDH |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL SETTLEMENT APPROVAL

DATED: June 10, 2020

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

Matthew L. Dameron (MO Bar No. 52093)
Amy R. Jackson (MO Bar No. 70144)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
Fax:    (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

**SIMMONS HANLY CONROY**

Jason "Jay" Barnes (MO Bar No. 57583)
231 South Bemiston, Suite 525
St. Louis, Missouri 63105
Tel:    (573) 418-0719
jaybarnes@simmonsfirms.com

***Counsel for Plaintiffs and the Settlement Class***

# TABLE OF CONTENTS

I.   FACTUAL OVERVIEW ........................................................................... 1

   A.  THE SETTLEMENT ADMINISTRATOR EXECUTED THE COURT-APPROVED NOTICE PLAN ...... 2

   B.  THE SETTLEMENT CLASS RESPONDED FAVORABLY TO THE CLASS NOTICE PLAN AND

   SETTLEMENT ........................................................................................ 3

II.   LEGAL STANDARD ........................................................................... 5

III.   THE SETTLEMENT SATISFIES THE FACTORS IN RULE 23(E) ........................... 6

   A.  CLASS REPRESENTATIVES AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE

   CLASS. .............................................................................................. 7

   B.  THE SETTLEMENT WAS NEGOTIATED AT ARM'S LENGTH. ...................................... 8

   C.  THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE. .......................................... 9

      *1.  The costs, risks, and delay of trial and appeal.* ...................................... 9

      *2.  The effectiveness of administration.* ................................................. 11

      *3.  The proposed attorneys' fees.* ......................................................... 14

   D.  THE PROPOSAL TREATS CLASS MEMBERS EQUITABLY. ...................................... 18

   E.  THE EXPERIENCE AND VIEWS OF COUNSEL, AND OTHER RECENTLY APPROVED FOOD AND

   BEVERAGE LABELING CLASS ACTION SETTLEMENTS, FURTHER SUPPORT FINAL APPROVAL . 19

IV.   THE REQUESTED SERVICE AWARDS ARE REASONABLE. ........................... 21

V.   NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS WAS THE BEST

PRACTICABLE AND SATISFIED DUE PROCESS. ........................................... 23

VI.   CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008)............ 8

*Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013).................................................................................................................. 23

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .................................................................................................................................................. 6

*Boeing Co. v. Van Gemert*, 444 U.S 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980)..................... 14

*Bruno v. Quten Research Inst., LLC*, No. SACV11-173, 2013 WL 990495 (C.D. Cal Mar. 13, 2013) ............................................................................................................................... 10

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)........................... 15

*Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105 (D. Minn. Sept. 18, 2006)........ 16

*Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395 (W.D. Mo. Mar. 13, 2012)........................................................................................................................... 6

*Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 (W.D. Mo. June 11, 2015)......... 21

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................. 5

*EEOC v. Fairbault Foods, Inc.*, Civ. No. 07-3976, 2008 WL 879999 (D. Minn. Mar. 28, 2008)16

*Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 (W.D. Mo. Oct. 15, 2012) .................................................................................................................................................. 23

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005)................................... 16

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)......................................................................... 15

*Guttmann v. Ole Mexican Foods, Inc.*, 14-CV-04845, 2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ............................................................................................................................... 10

iii

*Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) .................................................................................. 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .......................................................................... 14

*Hunter v. Nature's Way Prod.,* No. 3:16-CV-532-WQH-AGS, 2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ................................................................................................................ 13, 20

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ............................................................. 15, 16

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ...................................... 19

*In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002).................... 15

*In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005).......................................................................... 15, 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ................................................................................................................................ 5

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) .......................... 17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012)........................................................................................................... 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3rd Cir. 1998)15

*In re Serzone Products Liability Litig.*, 231 F.R.D. 221 (S.D. W.Va. 2005)................................. 12

*In re St. Paul Travelers Securities Litigation*, 2006 WL 1116118 (D. Minn. April 25, 2006) ... 17

*In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813 (D. Kan. Mar. 20, 2019).............. 16

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002)........................................................ 15

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ................................................................................................................................ 5

iv

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005). 14, 15, 16

*Johnson v. Casey's Marketing Company*, No. 15-03086, 2015 WL 12806576 (W.D. Mo. Dec. 12, 2015) ................................................................................................................... 16, 21

*Johnston v. Comerica Mortgage, Co.*, 83 F.3d 241 (8th Cir. 1996) ...................................... 14, 15

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) 5

*Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002) .................................................. 8

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ........................................... 5, 11

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ....................................................... 5, 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................. 23

*Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198 (W.D. Mo. March 14, 2017) ................. 23

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) .................................................................. 16

*Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018) ................. 21

*Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995) .......................................................... 15

*Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011) ........................................................................................................................... 19

*Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222 (W.D. Mo. Nov. 16, 2011) .............. 6

*Swedish Hospital Corp v. Shalala*, 1 F.3d 1261 (D.C. Cir. Aug. 10, 1993) ................................. 15

*Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ..................... 21

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) ................................ 15

**Rules**

Fed. R. Civ. P. 30(b)(6) ................................................................................................................... 8

Federal Rules of Civil Procedure 23(c)(2) and 23(e) .................................................................. 12

Rule 23 ................................................................................................................ 16

**Other Authorities**

2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) ................. 17

4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.25, at 38-39 (4th ed. 2002) ............................................................................................................... 6

4 Newberg on Class Actions § 11.41 ............................................................... 5

7B Fed. Prac. & Proc. Civ. § 1797.5 (3d. ed.) ............................................... 6

# I.  FACTUAL OVERVIEW

The parties reached a class-wide settlement of the underlying litigation that achieves two primary goals sought by the plaintiffs in this action and the related *Fernandez* and *Colella* actions. The settlement, as specifically set forth in the Settlement Agreement as submitted to the Court [Doc. # 46] (the "Settlement"): (1) provides for significant and meaningful injunctive relief that includes relabeling, discontinuance, and/or reformulation of the products included in the Settlement – at an estimated cost of approximately $4.4 million to Defendant and an agreement to keep these changes in place for a minimum of two years from the Effective Date, and (2) creates a common fund of $3.8 million for cash payments to Class members.  Plaintiffs previously submitted the Settlement for the Court's consideration and preliminary approval. *See* Plaintiffs' Unopposed Motion for Preliminary Settlement Approval [Doc. # 46]. Atkins Nutritionals, though it denied all liability and reserved its rights to oppose any litigation class, did not oppose the Motion for Preliminary Approval or certification of a class for settlement purposes only.

On December 19, 2019, the Court issued its Order Granting Preliminary Approval of the Settlement [Doc. # 47]. In that Order, the Court preliminarily approved the Settlement, granted class certification for purposes of settlement only, appointed Class Representatives, appointed undersigned counsel as Class Counsel, and directed the parties to proceed with the approved Class Notice Plan, which the Court held provided "the best notice practicable under the circumstances, is a reasonable manner of notice, and constitutes valid, due and sufficient notice . . ." *See* Order at ¶ 4. The Court appointed CPT Group, Inc. to serve as the Notice and Claims Administrator. *Id.* at ¶ 5.

The Court will consider final approval of the Settlement at a hearing scheduled for June 25, 2020 at 11:00 a.m. in Jefferson City, Missouri. In support of the Court's final approval,

1

Plaintiffs respectfully submit the instant Motion and accompanying Declarations. [1] Atkins Nutritionals does not oppose Plaintiffs' Motion.

## A. The Settlement Administrator Executed the Court-Approved Notice Plan

After the Court's Preliminary Approval Order, CPT Group executed the Class Notice Plan approved by the Court. *See* Declaration of Ani S. Sarich on behalf of the CPT Group, Inc., attached hereto as Exhibit 1 ("CPT Declaration"). CPT Group provided the notice of the Settlement to 56 governmental authorities that—under the Class Action Fairness Act—have the right to receive notice of any such class action settlement; these entities included 50 state attorneys general, the United States Attorney General, and the attorneys general in four territories and the District of Columbia. Ex. 1 at ¶ 4.

CPT also carried out the Notice Plan and:

- created a Settlement website, which contained copies of relevant case and settlement documents and information, including the Claim Form, the Long Form Class Notice approved by the Court, a Frequently Asked Questions section, key dates, instructions and deadlines for Settlement Class Members to submit claims, opt-out, or object to the Settlement, and the date and time of the Final Approval Hearing. The Settlement website also allowed for the direct electronic submission of claims by Settlement Class Members.

- issued a press release concerning the Settlement that directed Settlement Class Members to the Settlement website, which was re-published by 152 media and publication outlets across the country with a total potential audience of 97,716,857 people.

---

[1] As detailed further below and in its contemporaneously filed declaration, the Notice and Claims Administrator, CPT Group, completed its final accounting of Settlement Class member Claims on June 10, 2020. Accordingly, this Motion is ripe for final determination at the scheduled June 25, 2020 hearing.

2

- executed a multi-layered digital banner advertising campaign that ran a series of digital banner advertisements on several social media platforms, including Instagram, Twitter, and Facebook, and through Google Ads, that collectively served over 43 million impressions to consumers and caused over 133,000 direct clicks to view the Settlement website.

Ex. 1 at ¶¶ 5-14.

CPT has verified that the Class Notice Plan was "timely implemented" between January 2020 and late March 2020 and "successful in reaching, and indeed, exceeding the target audience of Settlement Class Members." Ex. 1 at ¶ 14.

### B. The Settlement Class Responded Favorably to the Class Notice Plan and Settlement

The Settlement Class's tremendous response to the Class Notice Plan also demonstrates its effectiveness. The Class Notice Plan generated over 206,000 responses, and of those 206,000+ responses, over 159,000 were Settlement Class Members filing approved claims to participate in the cash proceeds of the Settlement.[2] *See* Ex. 1 at ¶ 28. This far exceeded the CPT's initial estimate of an anticipated approximately 39,000 filed claims.[3]

Not only did the Settlement Class respond overwhelmingly favorably through the affirmative claims process, but they also responded positively as shown by the absence of virtually any opposition to the Settlement. Out of over 206,000+ affirmative responses to the Notice, only

---

[2] Approximately 46,820 claims were rejected by the Claims Administrator as deficient, late, duplicative, fraudulent, or on other grounds and were not cured after opportunity to do so. *See* Ex. 1 at ¶¶ 20-28 (detailing the number of rejected claims and the bases for rejection).

[3] As detailed in CPT's accompanying declaration, given the success of the Class Notice Plan, CPT's administration fees and costs exceeded its estimate submitted with the motion for preliminary approval. Plaintiffs and CPT request that the Court approve CPT's final invoice of administration fees and costs, payable out of the Settlement Fund and attached as Exhibit I to CPT's declaration, and which reflects a substantial discount on CPT's actual fees and costs in order to promote as much monetary recovery to claimant Settlement Class Members as possible. Ex. 1 at ¶ 38.

3

one individual excluded himself from the Settlement Class, and no Settlement Class Members submitted a valid objection to the Settlement. *Id.* at ¶¶ 17-18.

Plaintiffs' Counsel did receive two informal and nearly identical complaints about the settlement from Jasmine Taylor and Genal Moore Newby. Both Ms. Taylor and Ms. Moore sent letters to Class Counsel requesting that they engage in "mediation" with them directly about the Settlement. *See* Declaration of Matthew L. Dameron, attached hereto as Exhibit 2, at ¶¶ 20. Notably, while Ms. Taylor and Ms. Moore each claim to be "class members" neither Ms. Taylor nor Ms. Moore actually stated in their letters that they purchased any of the Subject Products during the Purchase Period (or provided Proof of Purchase), much less included an "averment under penalty of perjury" that they purchased the Subject Products, as required to constitute a valid objection under the Court's Preliminary Approval Order.[4]

Based on the letters, it appears the complainants want Class Counsel to "mediate" in order to obtain them more than the agreed-upon settlement amount. In direct communications with each of the complainants, Class Counsel advised them of their rights in the Settlement (including the right to object to the Settlement or opt-out if they believed the Settlement was insufficient), directed them to resources concerning the Settlement, and explained that individual "mediation" was not available. *Id.* at ¶ 20.[5] Ms. Taylor also contacted counsel for Atkins Nutritionals requesting the same "mediation" of her claim. *Id.* After that outreach, Class Counsel again explained to both

---

[4] The letters from Mss. Taylor and Moore also do not constitute proper objections to the settlement because they were not filed with the Court, did not include a statement as to whether they intend to appear at the Final Approval Hearing, and did not provide a list of any other objections submitted to any federal or state class actions in the past 5 years, all of which is required by the Court's Preliminary Approval Order for a valid objection. Nonetheless, in the interest of full disclosure and candor to the Court, Class Counsel discloses them and will briefly address them herein.

[5] Class Counsel believes that both complainants are associated with a "Class Action Mediation Webinar" being touted on social media where participants purportedly can learn "How to Cash in on Class Actions." *See* Ex. 2 at ¶ 21. For example, Ms. Moore highlighted the webinar in her Instagram posts and stated that her sister had "made over 63K in 10 months" from class actions. *Id.*

4

Ms. Taylor and Ms. Moore (1) that Class Counsel could not negotiate a separate individual settlement for Settlement Class Members through "mediation" or any other avenue, and (2) they could object to, or opt-out of, the Settlement if they genuinely believed it was insufficient. Ultimately, neither Ms. Taylor nor Ms. Moore filed a claim for payment, objection to the Settlement, or opt-out exclusion request.

Aside from these two informal complaints, the Settlement Class overwhelmingly responded positively to the Settlement. The Notice generated hundreds of thousands of responses, over 159,000 valid claims, no formal objections, and only one request to be excluded. Through its actions, the Settlement Class has demonstrated the efficacy of the Notice and endorsed the sufficiency of the Settlement. The Court should grant final approval of the Settlement.

## II.    LEGAL STANDARD

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A Settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Moreover,

5

the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in litigating and settling complex cases, including class actions, settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.,* No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

Approval of a Rule 23 class settlement involves a two-step process. MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.25, at 38-39 (4th ed. 2002). The first step was completed when the Court granted preliminary approval of the Settlement and approved the Class Notice Plan. In the second and final step, the Court takes into consideration the notice provided to class members and any objections raised. 7B Fed. Prac. & Proc. Civ. § 1797.5 (3d. ed.). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012).

In light of these considerations and the factors outlined herein, the Court should grant Plaintiffs' Motion and give its final approval to the Settlement.

## III.   THE SETTLEMENT SATISFIES THE FACTORS IN RULE 23(E)

Plaintiffs previously asserted that the Settlement satisfies the factors contained in Rule 23(e) and the Court agreed in its Order providing preliminary approval.[6] *See* Plaintiffs' Motion [Doc. #

---

[6] Plaintiffs incorporate herein their Unopposed Motion for Preliminary Settlement Approval [Doc. # 46] and its supporting exhibits.

46] at pp. 9-19; Order [Doc. # 47] at ¶ 1. Nonetheless, Plaintiffs will briefly review those factors herein.

In evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)      the costs, risks, and delay of trial and appeal;
>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)     any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.[7]

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Advisory Committee Notes.

## A.     Class Representatives and Class Counsel have adequately represented the Class.

The Class Representatives and Class Counsel have adequately represented the Class since the litigation was commenced in 2016.[8]  In three different jurisdictions, Class Counsel have engaged in extensive motion practice opposing Atkins Nutritionals' efforts to have the litigation dismissed; these efforts involved complicated and nuanced questions of preemption and the scope

---

[7] Regarding paragraph C(iv), there is no "agreement required to be identified under Rule 23(e)(3)." The Comment to Rule 23 contemplates that such agreements are those that "may have influenced the terms of the settlement . . ." Class Counsel can verify that there are no agreements affecting the settlement other than the parties' Settlement Agreement previously submitted to the Court. *See* Ex. 2 at ¶ 7.

[8] This litigation commenced with the filing of *Johnson v. Atkins Nutritionals, Inc.*, Case No. 16-4213 (W.D. Mo.). The parties in *Johnson* ultimately reached an individual settlement, but the same counsel have represented Plaintiffs throughout the litigation.

7

of the applicable consumer protection statutes. When appropriate, Class Counsel have amended the pleadings to conform to each Court's respective decisions concerning dismissal (including with respect to which labeling statements could, and which could not, be challenged in a civil action). Class Counsel have vigorously pursued discovery, resulting in the production of thousands of documents by Atkins Nutritionals, and the deposition of Atkins Nutritionals' corporate representative under Fed. R. Civ. P. 30(b)(6). Class Counsel also have engaged with Plaintiffs in responding to discovery propounded by Atkins Nutritionals. Class Counsel have diligently prosecuted the litigation for three years in three different venues, and they have ably represented the Settlement Class's interests in the litigation.

### B. The Settlement was negotiated at arm's length.

The Settlement was fairly negotiated. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579, *5 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

After three-plus years of vigorous litigation, the Settlement was honestly and fairly negotiated by competent counsel with the assistance of a well-respected mediator. The parties engaged in several alternative dispute resolution mechanisms, including an Early Neutral Evaluation performed by a private mediator in 2016, an Early Case Evaluation before U.S. Magistrate Judge William Gallo (the Magistrate Judge assigned to the *Fernandez* case) in 2018, and a settlement conference with the Hon. John T. Maughmer of this Court; none of these efforts

8

were successful. Only after additional, vigorous and contested litigation did the parties agree to mediate the cases on a global basis with Judge Jay Daugherty, and only then did the parties agree to settle after a lengthy mediation (that itself was still unsuccessful) and protracted continued negotiations that were facilitated by Judge Daugherty and continued over several months following the global mediation. Under these circumstances it cannot be questioned that the agreement was reached at arm's length.

**C.      The relief provided for the Class is adequate.**

The Settlement provides significant relief to Class members and compensates them fairly for their claims and is well within the range of settlements of similar cases, particularly in light of the following factors:

*1.      The costs, risks, and delay of trial and appeal.*

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. If the Settlement is not approved, the remaining discovery, certification briefing and hearing, summary judgment, trial and appeal(s) would consume significantly more time and resources, putting at risk any potential recovery for the Class or, at the very least, significantly delaying any recovery. On the other hand, the Settlement ensures that Class members will recover significant, immediate relief, including that which this litigation primarily sought to achieve, namely, changes to the labels on Atkins Nutritionals' products, and the elimination or reduction of certain sugar alcohols (maltitol) in several of its products.

Specifically, the Settlement guarantees significant equitable relief for Settlement Class Members, which includes: (1) the removal of the "minimal impact" statement from Atkins Nutritionals' packaging that this Court (and the Eastern District of New York and the Southern

9

District of California) found was the sole basis for Plaintiffs' claims; (2) the discontinuance of and prohibition on reintroducing 12 of Atkins Nutritionals' products containing maltitol; (3) the reformulation of 11 Atkins Nutritionals' products containing maltitol to eliminate or reduce the use of maltitol; and (4) a two-year prohibition on reintroducing that "minimal impact" statement, the discontinued products, and maltitol as an ingredient in those products in which it has been eliminated. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and alone weighs in favor of granting final approval of the settlement, as several courts in similar food and beverage labeling class action settlements have concluded.[9]

In addition to this compelling injunctive relief, the settlement also provides monetary relief to Settlement Class Members for their purchases of Atkins Nutritionals products that contained more than 10 grams of maltitol during the applicable purchase period (since 2013 for purchases in Missouri, California, or New York, and since 2014 elsewhere). Settlement Class Members who established qualifying purchases via the Claim Form and submitted Proof of Purchase (e.g., receipts, packaging images) will receive cash refunds of 25% of the average national purchase prices of their products, with no per-consumer cap on such refunds, adjusted *pro rata* based on the aggregate dollar amount of claims. Settlement Class Members who submitted only a Claim Form (without Proof of Purchase) will receive 10% cash refunds, with a $100 per-consumer cap on such refunds, likewise adjusted *pro rata* based on the total dollar amount of all claims.

---

[9] *See, e.g., In re Frito-Lay N. Am., Inc. "All Natural" Litig., 1:12-MD-02413 (E.D.N.Y. Nov. 14, 2017)* approving nationwide settlement of food labeling class action that provided only injunctive relief); *Guttmann v. Ole Mexican Foods, Inc.*, 14-CV-04845, 2016 WL 9107426, at *1 (N.D. Cal. Aug. 1, 2016) (approving nationwide settlement of food class action that enjoined defendant from using certain ingredient for multi-year period); *Bruno v. Quten Research Inst., LLC*, No. SACV11-173, 2013 WL 990495, at *4 (C.D. Cal Mar. 13, 2013) (approving class action settlement and noting that "there is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes, which includes benefits not only to class members but also to "the marketplace and competitors").

10

As described above, the Settlement Class's overwhelmingly positive response to the Settlement demonstrates their preference for a settlement in lieu of protracted litigation and trial. No Class member formally objected to the Settlement and only one individual asked to be excluded from the Settlement Class, which combined with the approximately 159,000 valid claims that were submitted to obtain additional cash compensation, leads only to one reasonable inference: the Settlement Class endorses the settlement and favors settlement compared to the prospect of continued litigation. *See, e.g., Marshall v. National Football League*, 787 F.3d 502, 513 (8th Cir. 2015) ("The fact that less than ten percent of the entire class opted out of the settlement . . . suggests it was favorable to what most members believed their claims worth."). In sum, the Settlement brings substantial and certain injunctive and monetary value to the Class now, rather than uncertain value to an uncertain number of people at an uncertain time after extensive litigation involving complex and changing law.

### 2. *The effectiveness of administration.*

The Court appointed CPT Group to serve as the Notice and Claims Administrator and there can be little doubt that CPT Group ably performed its obligations under the Settlement. CPT Group carried out its obligations to broadly disseminate Notice of the Settlement, diligently communicated with Settlement Class members and counsel for the parties, and administered claims and other matters related to the Settlement. The Declaration of Ms. Sarich, attached hereto as Exhibit A, reflects CPT Group's efforts and the effectiveness of those efforts, which yielded:

- publication of the settlement by at least 152 media and publication outlets across the country;

- a multi-layered digital advertising campaign targeted to Settlement Class members that generated over 43 million impressions;

11

- more than 859,000 views of the Settlement website;

- contact with over 1,100 Class members through the settlement-specific telephone line and email address;

- over 206,000 responses to the Notice Plan; and

- over 159,000 valid claims.

*See* Ex. 1.

CPT Group's robust efforts generated exactly the type of favorable response the parties hoped to achieve and fulfilled Rule 23's due process goals of fairly apprising Class members of a potential settlement and their rights thereunder. Indeed, CPT's combined efforts were expected to reach approximately 86% of the Class, and CPT Group has testified that the key performance indicators of the Class Notice Plan demonstrate that the Class Notice Plan has exceeded CPT's notification goals. Ex. 1 at ¶¶ 13-14. This extensive notice plan is more than sufficient in a consumer class action like the instant case. *See, e.g.*, *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 236 (S.D. W.Va. 2005) (holding the notice plan designed to effectively reach approximately 80% of class members comports with the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (approving a notice plan that was estimated to reach 81.4% of class members); *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, No. 1:15-mc-1825, fn. 2 (D.D.C. June 5, 2020) (Doc. 244 (Final Approval Order) (finally approving a settlement in which notice was effected through publication, online display, and social impressions and was estimated to have reached 72% of the settlement class).

CPT Group also has effectively administered the claims process for the benefit of the Settlement Class. CPT received and reviewed more than 206,000 Claim Forms, from which it

identified and culled more than 38,000 duplicative claims, approximately 7,500 fraudulent claims, and 11 untimely claims. Ex. 1 at ¶¶ 19-28. Through these efforts, CPT has ensured that the full extent of the Monetary Relief is reserved for the 159,251 non-duplicative, valid claims timely submitted by Settlement Class Members. Ex. 1 at ¶¶ 29. As a result, if the Settlement is finally approved, the 151 Settlement Class Members who submitted claims with Proof of Purchase will, on average, receive $22.69, the 599 Settlement Class Members who submitted claims with and without Proof of Purchase will, on average, receive $13.82, and the 158,501 Settlement Class Members who submitted claims without any Proof of Purchase will, on average, receive $9.71, with all claimants receiving, on average, $9.73, from the Settlement Fund funded by Atkins Nutritionals on January 16, 2020 (and accruing interest since then), even after applying the *pro rata* reduction that was necessary because of the volume of valid claims submitted. Ex. 1 at ¶¶ 29 & 33. *Cf. Hunter v. Nature's Way Prod.,* No. 3:16-CV-532-WQH-AGS, 2020 WL 71160 (S.D. Cal. Jan. 6, 2020); *Gregorio v. Premier Nutrition Corp.*, 1:17-cv-05987 (S.D.N.Y. Jan. 17, 2019) (similar class action settlements involving nearly identical and substantially lower, respectively, per-claimant payments that have been finally approved by courts), discussed further *infra* at Section III.E. Moreover, CPT will make these payments to Settlement Class Members by whatever method of distribution each class member chose, *i.e.*, by mailed check or direct deposits, within 30 days of the Effective Date of the Settlement Agreement.

Pursuant to the Settlement Agreement, all checks issued to Settlement Class Members must be redeemed within 90 days of the Effective Date. If any checks are not so redeemed, the Parties propose that such amounts (and any other monies remaining in the settlement fund that cannot be evenly distributed to Settlement Class Members) be paid to the American Diabetes Association, as a *Cy Pres* recipient.

13

### 3.    *The proposed attorneys' fees.*

Pursuant to the Settlement Agreement, Atkins Nutritionals has agreed not to object to or oppose an application by Class Counsel for fees and expenses as long as the application does not exceed thirty-percent (30%) of the total "Total Settlement Value" defined in the Settlement Agreement as $6.8 million (the Monetary Relief plus the initial estimated costs of injunctive relief); in other words, a cap on the amount of fees that Class Counsel may request without objection from Atkins Nutritionals.[10] Class Counsel, in turn, seeks only 25% of the $6.8 million settlement value, or $1.7 million. As detailed above, Class members were notified about this fee amount, and no Class member objected to the proposed attorneys' fees.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Here, the parties have done so and they have agreed attorneys' fees should be paid from the common fund settlement. When a settlement yields a common fund for class members, fees must be paid from recovery. *Boeing Co. v. Van Gemert*, 444 U.S 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eight Circuit, use of a percentage method of awarding attorneys' fees in a common fund case is not only approved, but also well established." *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnson v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO*

---

[10] The parties negotiated these attorneys' fees, with the assistance of Judge Daugherty, after agreeing on the injunctive and monetary relief to the Class.

14

*Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F. Supp. 2d at 1993.

As the Eighth Circuit has recognized, using a percentage of the fund approach most closely aligns the interest of the lawyers with the class, since the more that is recovered for the class, the more attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also In re Charter Communications, Inc. Securities Litig.*, No. MDL1506; 02-1186; 2005 WL 4045741 (E.D. Mo. June 30, 2005); *In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).[11]

The amount sought by Class Counsel is well within the range approved by courts. The Eighth Circuit has "frequently awarded attorney fees up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). And other courts within the Eighth Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (*quoting In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)).[12] Indeed, in a previous decision approving class action

---

[11] Other Circuits also express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). *See also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Swedish Hospital Corp v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. Aug. 10, 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case").

[12] *See also In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming an attorney's fee award of 36% in a class action suit); *Burks v. Bi-State Development Agency of the Missouri-Illinois Metropolitan District et al*, Case No. 4:09-CV-1302 (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo.

15

settlements, *this* Court has approved fee amounts within the range requested by Class Counsel. *Johnson v. Casey's Marketing Company*, No. 15-03086, 2015 WL 12806576 *1 (W.D. Mo. Dec. 12, 2015) (approving up to one-third of the settlement fund).

And if the Court were inclined to conduct a lodestar crosscheck, Class Counsel's lodestar is within the accepted reasonable range with a multiplier because it is less than 2—cumulatively Class Counsel's lodestar is approximately $1.1 million. *See* Ex. 2 at ¶¶ 10-18 (detailing the lodestar of Williams Dirks Dameron LLC and its local counsel in California and New York); Declaration of Randall Barnes and Jay Barnes, attached hereto as Exhibit 3 (detailing lodestar for the Barnes Law Firm).

In conducting a lodestar crosscheck, courts in the Eighth Circuit and in the Kansas City area routinely find lodestar multipliers up to 5-6 times counsel's lodestar to be reasonable. *See Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (affirming attorney's fees with a 5.3 times lodestar multiplier and noting such a range does "not exceed the bounds of reasonableness"); *Huyer v. Buckley*, 849 F.3d 395, 399–400 (8th Cir. 2017) (observing lodestar multipliers of up to 5.6 times class counsel's lodestar to be in the reasonable range for a lodestar crosscheck); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813, at *5 (D. Kan. Mar. 20, 2019) (the court

---

July 14, 2009) (approving 33% of fund); *Wolfert*, Case No. 4:08CV1643 (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *Staton v. Cavo Communications, Inc.*, Case No. 08-0273 (E.D. Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%); *Hamilton, et al. v. ATX Services Inc.*, Case No: 08-0030-SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 36%); *EEOC v. Fairbault Foods, Inc.*, Civ. No. 07-3976, 2008 WL 879999, at *4 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case No. 07-1535 (E.D. Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891 (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. Apr. 29, 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund).

approved of multipliers of 2, 2.5, and 3 and stated that "a multiplier of 3 is well within the range allowed in other cases involving large settlements"); *In re St. Paul Travelers Securities Litigation*, 2006 WL 1116118, at *1 (D. Minn. April 25, 2006) (approving multiplier of 3.9); *In re Charter Communications, Inc.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approving multiplier of 5.6).

In this case, Class Counsel seeks fees in the amount of 25% of the stipulated "Total Settlement Value" (the actual value of the Settlement actually exceeded this amount, which was stipulated for purposes of capping attorneys' fees), or $1.7 million—significantly less than the 30+% frequently approved by the Eighth Circuit and other courts in this Circuit, and less than Class Counsel could have sought under the Settlement. In the Notice, Class members were notified of this attorneys' fee request; no Settlement Class member objected to the amount of the attorneys' fees. Class Counsel's proposed fee is reasonable in light of the work performed for the Class, and the Court should approve it.

Class Counsel is also seeking approval of no more than $35,103.12 for out-of-pocket expenses. These expenses were all necessary in the pursuit of this litigation and the results obtained. These costs were reasonable and necessary. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class.").[13]

---

[13] *See also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.).

17

**D.     The proposal treats class members equitably.**

The settlement treats Class members fairly and equitably. All Settlement Class Members, even those who did not file a claim, will receive the benefits of the three forms of injunctive relief: (1) relabeling of *all* Atkins Nutritionals products that are encompassed by this litigation (those containing sugar alcohols or glycerin), (2) discontinuance of 12 products containing maltitol, and (3) reformulation of another 11 products (and prohibitory injunctions as to all forms preventing Atkins Nutritionals from reintroducing these labeling statements, products, and eliminated ingredients in certain products for a defined time period).

In addition, Settlement Class Members who submitted valid claims will be entitled to cash awards for their purchases of Atkins products according to a formula that will apply to all Settlement Class Members uniformly.

The Settlement does make a slight distinction based on the states where Actions are pending (Missouri, New York, and California; collectively "Action States") and other states. The Settlement Class definition encompasses an additional year (January 1, 2013 to present) for purchases in the Action States where this case and the *Fernandez* and *Colella* cases were brought and are pending; comparatively, the Settlement Class definition begins a year later (on January 1, 2014) in relation to other states.[14] This distinction accounts for the available statutes of limitations in the Action States; in other states, no such litigation was pending and thus, no statutes of limitation could have been tolled for those consumers. Accordingly, there is a slight variation among states in the Settlement Class definition, but that variation is justified based on the distinctive statutes of limitations between Action States and other states.

---

[14]  The district courts overseeing *Colella* (E.D.N.Y.) and *Fernandez* (S.D. Cal.) have stayed those cases pending the settlement proceedings in this Court. Upon final approval of the settlement from this Court, Plaintiffs will dismiss those actions with prejudice.

In all other respects the Settlement treats Settlement Class Members consistently and fairly. No Settlement Class Members receive special treatment, except as specifically explained regarding "Service Awards" to Class Representatives who have participated in the case.

**E.      The Experience and Views of Counsel, and Other Recently Approved Food and Beverage Labeling Class Action Settlements, Further Support Final Approval**

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the Settlement Class had the benefit of attorneys who are highly experienced in complex class actions litigation and familiar with the facts and law in the case, and who have negotiated many class action settlements. In counsels' view, the settlement provides substantial benefits to the Settlement Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays and uncertainties of litigation, trial and post-trial proceedings. Further, in counsels' experience, when compared with similar litigation, the relief to the Settlement Class is substantial. *See, e.g.*, *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, 1:12-MD-02413 (E.D.N.Y. Nov. 14, 2017) (approving nationwide settlement of food labeling class action that provided only injunctive relief).

Two recent and finally approved settlements in similar food and beverage labeling class actions further demonstrate why final approval is appropriate in this case. *See Hunter v. Nature's Way Prod.*, No. 3:16-CV-532-WQH-AGS, 2020 WL 71160 (S.D. Cal. Jan. 6, 2020); *Gregorio v. Premier Nutrition Corp.*, 1:17-CV-05987 (S.D.N.Y. Jan. 17, 2019). In *Nature's Way*, the settlement resolved allegations that Nature's Way coconut-oil products were misleadingly and unlawfully marketed as healthy. *See* 2020 WL 71161 at *1. The nationwide class settlement created a common fund of $1.85 million, from which settlement class member claimants received an average $3.27 per unit claimed and $9.87 per claimant after a *pro rata* reduction due to a higher-than-expected claims rate, as well as injunctive relief in the form of relabeling and modified advertising practices. *Id.* at *2, *6. In finding the settlement fair, reasonable, adequate, and in the best interest of the class, the court "agree[d] that the actual recovery through settlement confers substantial benefits on the Class that outweigh potential recovery through full adjudication." *Id.* at *5.

The settlement in *Premier Nutrition* similarly resolved claims of a nationwide class that were based on the allegation that the defendant's marketing and labeling of its protein-shake products misrepresented the specific amount of protein in the product. *See* 1:17-CV-05987 (S.D.N.Y. Jan. 17, 2019) (Doc. 101 (Final Approval Order) & Doc. 97 (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Final Approval of First Amended Class Action Settlement)). The settlement likewise established a settlement fund and provided for multiple forms of injunctive relief. *Id.* at Doc. 97, p. 14. The response of the class included 250,000 unique claims, but also 7 objections and 135 opt-outs. *Id.* at pp. 29-30. The settlement also involved a *pro rata* adjustment due to the high claim amount, with claimant ultimately receiving approximately $0.86 per protein shake purchased with proof of purchase and $0.43 per protein shake purchased

without proof of purchase. *Id.* at p. 8. In finally approving the settlement, the court specifically found that "the consideration to be paid to members of the Settlement Class is reasonable, and in the best interests of the Settlement Class Members." *Id.* at Doc. 101, p. 3. *See also In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.,* No. 1:15-mc-1825 (D.D.C. June 5, 2020) (Doc. 244 (Final Approval Order) (finally approving a settlement that resulted in payments of between $3.40 and $4.25 for each settlement class member that submitted a claim).

## IV. THE REQUESTED SERVICE AWARDS ARE REASONABLE.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 at *2, 7 (W.D. Mo. June 11, 2015) (approving incentive award to named plaintiff in the amount of $14,145); *Johnson*, 2015 WL 12806576 *1 (W.D. Mo. Dec. 12, 2015) (approving the terms of the Settlement agreement, including incentive award to named plaintiff in the amount of $7,500); *Hermsen v. City of Kansas City*, No. 11-753 at Doc. # 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for three class representatives); *Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 at *9 (E.D. Mo. May 25, 2018) (approving service awards of $10,000; $5,000 and $2,500).

In this case, Plaintiffs seek service payments for Class Representatives who have participated in the litigation, participated in the multiple mediations and settlement discussions, and provided written discovery responses. The total requested service awards constitute slightly more than 0.5% of the stipulated $6.8 million "Total Settlement Value" (again, the total value of the Settlement is much higher). The proposed amounts are as follows:

21

- $10,000 each for named Plaintiffs Amanda Smith and Cheryl Fernandez;

- $5,000 for named Plaintiff Joseph Colella; and

- $3,000 each for Plaintiffs Joseph Timmerman, Kelly Styles Longo, Sandra Styles-Hovarth, Johana Garcia, and Sharon Marie Betsill.

Plaintiffs Smith and Fernandez have been active participants in discovery and the litigation for several years, and both of these individuals attended and participated in the mediations and settlement discussions. In fact, Ms. Fernandez traveled to Kansas City from California to participate in the February mediation that ultimately resulted in this Settlement, and Ms. Smith traveled from Jefferson City to participate. Ms. Fernandez also participated in the Early Neutral Evaluation/settlement conference conducted in San Diego.

Plaintiff Colella also actively participated in the litigation for several years since filing his lawsuit. The other plaintiffs (Mr. Timmerman, Ms. Long, and Ms. Horvath) also either participated in the *Colella* litigation (joining as additional plaintiffs following the Eastern District of New York's order to amend that complaint), or, in the cases of Ms. Garcia and Ms. Betsell stood ready to do so via additional litigation against Atkins Nutritionals and have instead opted to join this case as named plaintiffs and class representatives, further strengthening the representation of the proposed *nationwide* class (these Class Representatives collectively are residents of Missouri, California, New York, Florida, and Louisiana).

In light of the small percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the incentive awards be approved. Again, the Notice apprised Settlement Class Members of the payment of incentive awards to Class Representatives; no one objected to the payments.

## V. NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS WAS THE BEST PRACTICABLE AND SATISFIED DUE PROCESS.

"[T]he the mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 at *4 (W.D. Mo. Oct. 15, 2012) (citation omitted). "The United States Supreme Court has stated notice must 'apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 211 (W.D. Mo. March 14, 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (citation omitted). "[N]otice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations and citation omitted). "What constitutes the best notice practicable under the circumstances depends on several factors, including the size of the class, whether the class members can be easily identified, and the probability that notice will reach the intended persons." *Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *13 (W.D. Mo. July 25, 2013) (citation omitted).

Here, the information provided in the Class Notice, including the Long Form Notice posted on the Settlement website, was sufficient to inform putative class members of their rights and obligations in the litigation, and it was broadly distributed through a robust advertising campaign specifically designed to reach Settlement Class Members and which, in fact, reached more of the potential class than CPT's original estimate. Ex. 1 at ¶ 14. The Class Notice Plan, as approved by the Court and as implemented by CPT, satisfied due process and was the best practicable notice under the circumstances here, where there were no records available to specifically identify all Settlement Class Members.

## VI. CONCLUSION

For the reasons set forth herein and after the hearing scheduled for June 25, 2020, Class Counsel respectfully request that the Court grant final approval of the Settlement, and adopt the proposed order submitted contemporaneously directly to Chambers.

DATED: June 10, 2020

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Matthew L. Dameron*
Matthew L. Dameron (MO Bar No. 52093)
Amy R. Jackson (MO Bar No. 70144)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
Fax:    (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

**SIMMONS HANLY CONROY**
Jason "Jay" Barnes (MO Bar No. 57583)
231 South Bemiston, Suite 525
St. Louis, Missouri 63105
Tel:    (573) 418-0719
jaybarnes@simmonsfirms.com

***Counsel for Plaintiffs and the Settlement Class***

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2020, the proceeding was filed using the Court CM/ECF System, which will provide notice of the same to all counsel of record.

*/s/ Matthew L. Dameron*
Counsel for Plaintiffs and the Settlement Class

24